UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STEELCASE INC., a Michigan
corporation,

                Plaintiff,                          Case No. 1:04CV0026

v                                         Honorable Robert Holmes Bell
                                         Chief, U.S. District Judge

HARBIN'S INC., an Alabama
corporation,

                Defendant.
_____/

**STEELCASE INC.'S BRIEF IN OPPOSITION TO HARBIN'S INC.'S
MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR
IMPROPER VENUE PURSUANT TO FED. R. CIV. P. 12(b) (2) AND
(3) OR IN THE ALTERNATIVE FOR TRANSFER OF VENUE**


**ORAL ARGUMENT REQUESTED**

## Table of Contents

Page

Index of Authorities .................................................................................................... ii

Statement of Relevant Facts ........................................................................................ 1

Argument ...................................................................................................................... 5

I.   This Court Has Personal Jurisdiction Over Defendant Harbin's. ........................ 5

Standards Applicable to Personal Jurisdiction ............................................................ 5

   A.  Defendant Harbin's Has Purposely Availed Itself of the Privilege of Acting in
      Michigan. ............................................................................................................ 6

   B.  Steelcase's Cause of Action Arises from Defendant's Contacts with Michigan. ........... 12

   C.  Defendant Cannot Show That There Are Other Considerations That Render
      Jurisdiction Unreasonable. ............................................................................... 13

II.  Venue Is Proper In This District. ...................................................................... 14

III. Defendant's Motion To Transfer Under 28 U.S.C. § 1404 Should Be Denied. ..................... 16

   A.  Plaintiff's Choice of Forum Should Prevail Unless the Balance of Convenience
      Strongly Favors Transfer. ................................................................................. 16

   B.  Defendant Has Made No Showing to Justify a Transfer of Venue. ................................ 16
      1.  The Convenience of the Parties. ..................................................................... 17
      2.  The Convenience of Witnesses. ...................................................................... 17
      3.  The Interest of Justice. ................................................................................... 18

Summary ..................................................................................................................... 19

Conclusion .................................................................................................................. 19

# Index of Authorities

Page

CASES

*Almeida v Green*, No. 1:94-CV-651, 1995 WL 113493, at *1 (W.D. Mich. Jan. 20, 1995) ........16

*Alta Analytics, Inc. v Muuss*, 75 F. Supp. 2d 773, 783 (S.D. Ohio 1999)....................................15

*Asahi Metal Indus.Co. v Superior Court*, 480 U.S. 102, 113; 107 S. Ct. 1026 (1987)................13

*Boyd v Snyder*, 44 F. Supp. 2d 966, 969 (N.D. Ill. 1999) ............................................................17

*Burger King Corp. v Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174 (1985) ...................... 7, 9, 13, 14

*Calphalon Corp v Rowlette*, 228 F.3d 718 (6th Cir. 2000) ....................................................10, 11

*Chrysler Corp. v Fedders Corp*, 643 F.2d 1229, 1236 (6th Cir. 1981) ........................................6

*Dorsey v American Golf Corp*, 98 F. Supp. 2d 812, 816 (E.D. Mich. 2000)..............................15

*Evans Tempcom, Inc. v Inex Indus., Inc*, 778 F. Supp. 371, 377 (W.D. Mich. 1990) .................16

*Fannin v Jones*, 229 F.2d 368, 369 (6th Cir. 1956).....................................................................18

*First Nat'l Bank v J.W. Brewer Tire Co*, 680 F.2d 1123, 1126 (6th Cir. 1982)...........................13

*First of Michigan v Bramlet*, 141 F.3d 260 (6th Cir. 1998)..................................................14, 15

*In-Flight Devices Corp. v Van Dusen Air, Inc*, 466 F.2d 220, 229 (6th Cir. 1972) ...................12

*International Shoe Co v Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) ...................6

*International Techs. Consultants, Inc. v Euroglas S.A*, 107 F.3d 386, 391 (6th Cir. 1997) ..........5

*Michigan Coalition of Radioactive Material Users, Inc. v Griepentros*, 954 F.2d 1174, 1176
(6th Cir. 1992)..............................................................................................................................6

*Moses v Bus. Card Express, Inc*, 929 F.2d 1131, 1137 (6th Cir. 1991)......................................16

*Nationwide Mut. Ins.Co v Trys Int'l Ins. Co*, 91 F.3d 790, 793 (6th Cir. 1996) ...........................5

*Neogen Corp. v Neo Gen Screening, Inc*, 282 F.3d 883, 887 (6th Cir. 2002).........................5, 11

*Pakideh v Ahadi*, No. 99-CV-74424-DT, 2000 WL 545896, at *6 (E.D. Mich. Apr. 7, 2000) .... 15

*Southern Machinery Co. v Mohasco Industries, Inc*, 401 F.2d 374, 381 (6th Cir. 1968) ........ 6, 12

*Steelcase Inc. v Mar-Mol, Inc*, 2d. 210 F. Supp. 2d 920 (W.D. Mich 2002) ........ 9, 10, 11, 14, 15

*Sun Oil Co. v Lederle*, 199 F.2d 423, 424 (6th Cir. 1952) ..................................................... 16, 19

*Theunissen v Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) .................................................. 5, 6

*Thomas v Home Depot, U.S.A., Inc*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) ................... 17

*Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v Continental Elevator Co.*, No. 98-5311, 1999 U.S. Dist. LEXIS 7062, at *8 (E.D. Pa. May 12, 1999) .... 17

*Wien Air Alaska, Inc. v Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ........................................... 13

STATUTES

28 U.S.C. § 1391(a)(2) ................................................................................................................ 14

28 U.S.C. § 1401(a) .................................................................................................................... 16

28 U.S.C. § 1404(a) .................................................................................................................... 16

MCL 600.715 ................................................................................................................................ 6

**<u>STEELCASE INC.'S BRIEF IN OPPOSITION TO HARBIN'S INC.'S
MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR
IMPROPER VENUE PURSUANT TO FED. R. CIV. P. 12(b) (2) AND
(3) OR IN THE ALTERNATIVE FOR TRANSFER OF VENUE</u>**

Plaintiff, Steelcase Inc. ("Steelcase"), submits this brief in opposition to defendant Harbin's Inc.'s motion to dismiss for lack of personal jurisdiction and improper venue and alternative motion for change of venue. Steelcase's opposition is supported by the declarations of James Van Dyk, Marvis James, and James O'Connor. For the factual and legal reasons set forth below, each of defendant Harbin's motions is meritless, and all should be denied.

## <u>Statement of Relevant Facts</u>

Steelcase is an office furniture manufacturer with its headquarters in Grand Rapids, Michigan. Most of Steelcase's design, engineering, and manufacturing facilities are also located in Grand Rapids. (Van Dyk, ¶ 3).

Steelcase sells its products through a network of independently owned dealers who purchase product from Steelcase and sell that product to end users. (Van Dyk, ¶ 4). As shown in more detail below, Steelcase's dealer relations functions and Steelcase's financial and credit functions concerning its dealers are located in, and operate out of, Grand Rapids, Michigan. (Van Dyk, ¶ 4). All of Steelcase's dealers, including defendant Harbin's, consistently have regular contact with Steelcase personnel located in Grand Rapids. (Van Dyk, ¶ 4).

Harbin's is an Alabama corporation and a former Steelcase dealer. Harbin's Dealership Application was approved by Steelcase in 1991. Steelcase terminated Harbin's dealership in November, 2003 because of Harbin's repeated failure to pay for product purchased and to bring its account current. (Van Dyk, ¶ 5). Harbin's owes Steelcase over $368,000.00 for unpaid product and carrying charges. (Complaint, ¶ 21). Steelcase has sued Harbin's in this Court to collect the amount due.

Harbin's contends it is not subject to the personal jurisdiction of this Court because it alleges it did not transact business in Michigan. The facts very clearly show otherwise.

Harbin's applied to be a Steelcase dealer in 1990 — 1991. The Dealership Application was submitted to Steelcase for its review and ultimate approval in Grand Rapids. The Application was reviewed in Grand Rapids, and the required approval of Steelcase officials was given in Grand Rapids in March, 1991. (Van Dyk, ¶ 6, and Exhibit A).

At about the same time, Harbin's submitted a credit application to Steelcase, seeking a line of credit so that it would not have to pay cash for product. (Van Dyk, ¶ 7, and Exhibit B). As part of that credit application, Harbin's submitted financial information to Steelcase. (Van Dyk, ¶ 7). The entire initial credit review and approval process took place in Grand Rapids.

Pursuant to the terms of its dealer and credit agreements with Steelcase, Harbin's regularly forwarded copies of its financial statements to Grand Rapids for review by the Steelcase dealer credit department. All of that financial statement review, and the resolution of all credit issues and decisions by Steelcase, occurred in Grand Rapids. Had Harbin's refused or failed to submit its financial statements to Steelcase for its review, Harbin's could not have remained a Steelcase dealer. (Van Dyk, ¶ 9, and Exhibits E - G).

In 1993 the President of Harbin's, Michael Harbin, Jr., and his wife, Hope Harbin, provided personal guaranties to Steelcase guaranteeing the obligations of Harbin's Inc. in consideration of Steelcase providing credit to Harbin's. (See Exhibits L and M to Van Dyk Declaration.) Those guaranties were submitted to Steelcase in Grand Rapids. Significantly, the guaranties specifically provided that they are subject to the laws of Michigan and that the

guarantors consent to the jurisdiction of any state or federal court sitting in Kent County, Michigan. (Exhibits L and M, ¶ 9). These personal guaranties of Mr. and Mrs. Harbin were given in connection with Harbin's business with Steelcase, and the choice of forum provisions establish that Harbin's President knew that his business dealings with Steelcase had significant legal ties to, and consequences in, Michigan.

Steelcase requires its dealers to use an electronic ordering system known as "EDI." That system is maintained in Grand Rapids. Accordingly, virtually all of Harbin's purchase orders for Steelcase product were electronically submitted to Steelcase in Grand Rapids, where the purchase orders were acknowledged and accepted. (Van Dyk, ¶ 10). Any purchase orders not sent electronically would have been sent in writing, so all of Harbin's orders for Steelcase product were submitted to Grand Rapids. Every individual contract between Harbin's and Steelcase for Steelcase product was entered in Grand Rapids when Steelcase accepted a purchase order. (Van Dyk, ¶ 10).

A substantial majority of all the Steelcase product purchased by Harbin's was manufactured at the Steelcase facilities in Grand Rapids. (Van Dyk, ¶ 11). (Harbin's claim that its Steelcase product was manufactured wholly in Alabama is ludicrous. The sole Steelcase facility in Alabama makes only a portion of two Steelcase product lines.) (Van Dyk, ¶ 11).

Pursuant to the terms and conditions applicable to all Steelcase dealers, risk of loss and title to the Steelcase product passes at the time of delivery to a common carrier. (Van Dyk, ¶ 12, and Exhibit D). A substantial majority of the shipments from the Steelcase manufacturing facilities in Grand Rapids to Harbin's were delivered by common carrier (as opposed to Steelcase owned trucks). (O'Connor, ¶ 8). Thus, in round numbers, of all the

Steelcase product purchased by Harbin's, Harbin's took title in Michigan to no less than 40% — 50% of that product. (Van Dyk, ¶ 11; O'Connor, ¶ 8).

All of the invoicing of Harbin's for Steelcase product was done in Grand Rapids. (Van Dyk, ¶ 13).

Initially, Harbin's paid for Steelcase product by payment to a Steelcase office in Atlanta, Georgia. After Harbin's went into default, however, Harbin's was required to submit its payments to Steelcase in Grand Rapids and did so. (Van Dyk, ¶ 14). Harbin's paid for over $75,000.00 of product by checks delivered to Grand Rapids. (James, ¶ 5).

During the course of its performance as a Steelcase dealer, Harbin's personnel would regularly contact Steelcase personnel in Grand Rapids regarding such routine things as the status of orders, shipments, pricing, etc. (Van Dyk, ¶ 15). More importantly, Harbin's President, Michael Harbin, Jr., regularly and repeatedly contacted Steelcase personnel in Grand Rapids regarding credit terms, his company's financial status, and the status of his account. (Van Dyk, ¶ 15; James, ¶ 3). Attached to the Declaration of James Van Dyk as Exhibits H — DD are numerous emails, faxes, and letters documenting Harbin's regular contact with Steelcase officials on the very aspect of the Harbin's — Steelcase relationship which is the subject of this lawsuit. Much of that communication involved Mr. Harbin's efforts to persuade Steelcase employees in Grand Rapids to allow him to continue to sell Steelcase product after he was in default on payment.

Harbin's did more than simply communicate by telephone, email, fax, mail, and overnight delivery with Steelcase in Grand Rapids. In February, 2002, as part of the normal Steelcase dealer and customer relations program, Harbin's personnel (including Mr. Harbin himself) and customers of Harbin's personally came to Grand Rapids. They stayed the night,

and then spent the next day touring Steelcase manufacturing and design facilities and meeting with a large number of Steelcase representatives.  (Van Dyk, ¶ 16, and Exhibit EE).

Finally, the decision to terminate Harbin's dealership was made by Steelcase in Grand Rapids.  That decision was based on Harbin's failure and/or refusal to remedy its financial default.  The consequences, of course, of a financial default by a Steelcase dealer are felt company-wide, including at Steelcase's Michigan operations.  (Van Dyk, ¶ 17).

**Argument**

**I.    This Court Has Personal Jurisdiction Over Defendant Harbin's.**

Defendant claims that this Court lacks personal jurisdiction because Harbin's " has not purposefully availed itself of the privilege of dong business in Michigan."  Both the facts set forth above and the applicable law clearly contradict Harbin's claim.

**Standards Applicable to Personal Jurisdiction**

Because defendant has asserted lack of personal jurisdiction, Steelcase now has the burden of establishing its existence, *International Techs. Consultants, Inc. v Euroglas S.A,* 107 F.3d 386, 391 (6th Cir. 1997), and Steelcase must set forth specific facts showing that there is personal jurisdiction.  *Theunissen v Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991).  However, unless the Court conducts an evidentiary hearing, then Steelcase's pleadings and the declarations submitted in opposition to defendant's motion must be viewed in the light most favorable to Steelcase, and Steelcase need only make a *prima facie* showing of jurisdiction.  *Neogen Corp. v Neo Gen Screening, Inc,* 282 F.3d 883, 887 (6th Cir. 2002).

Personal jurisdiction over defendant may be asserted by this Court only if it complies with both Michigan's long arm jurisdictional statute and the constitutional requirements of due process.  *Nationwide Mut. Ins.Co v Trys Int'l Ins. Co,* 91 F.3d 790, 793 (6th Cir. 1996).  Michigan's long arm statute provides that Michigan courts have limited personal

jurisdiction over, and may render judgments against, any corporation where the judgment arises out of " . . . (1) the transaction of any business within the state."  MCL 600.715.  The Michigan statute has been held to extend to the maximum scope permitted by constitutional due process.  ***Chrysler Corp. v Fedders Corp***, 643 F.2d 1229, 1236 (6th Cir. 1981).  Thus, the two inquiries merge, and the assertion of personal jurisdiction is proper if it complies with constitutional due process requirements.  ***Michigan Coalition of Radioactive Material Users, Inc. v Griepentrog***, 954 F.2d 1174, 1176 (6th Cir. 1992).

The constitutional due process standard is whether defendant Harbin's has had "certain minimum contacts with [Michigan] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  ***International Shoe Co v Washington***, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (internal citation omitted).  In implementing that standard, the Sixth Circuit has adopted the following three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

***Southern Machinery Co. v Mohasco Industries, Inc***, 401 F.2d 374, 381 (6th Cir. 1968).  Those tests are all met here.

### A.     Defendant Harbin's Has Purposely Availed Itself of the Privilege of Acting in Michigan.

The most crucial inquiry for establishing personal jurisdiction is whether "the defendant has purposefully availed himself of the privilege of acting in, or causing consequence in, the forum state."  ***Theunissen v Matthews***, 935 F.2d 1454, 1460 (6th Cir. 1991).

The "purposeful availment" portion of the test was addressed by the United States Supreme Court in ***Burger King Corp. v Rudzewicz*** 471 U.S. 462, 105 S. Ct. 2174 (1985).   In ***Burger King***, the Supreme Court held that purposeful availment exists "where the defendant ?deliberately' has engaged in significant activities within a State, or has created ?continuing obligation' between himself and residents of the forum."   ***Id***. at 475-76.   Under those circumstances, "because the defendant's activities are shielded by ?the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."   ***Id***.   The Court noted that the "purposeful availment requirement ensures that a defendant will not be hailed into jurisdiction solely as a result of ?random,' ?fortuitous,' or ?attenuated' contacts. . . .'***Id***.  (citations omitted)

In ***Burger King*** the Supreme Court found personal jurisdiction to exist in Florida over two Michigan residents who were Burger King franchisees based solely on the defendants' franchise application, some pre-contractual negotiations, and entry into a franchise agreement with Burger King's headquarters in Florida.  In fact, the only interaction between Burger King's headquarters and the defendant was simply the making and enforcing of their franchise agreement and receiving payment.   ***Id***. at 480-81.   Burger King's headquarters did not manufacture the goods sold to defendant, it did not ship goods to the defendant, and it was in no way involved with the day-to-day conduct of defendants' business.   Other than attendance by one defendant (not both) at a training session in Florida, neither defendant had any physical connection to Florida.

Harbin's contacts with the forum state in this case far exceed those of the defendants in the ***Burger King*** case.  Harbin's initiated contact with Michigan when it submitted an application to become a Steelcase dealer.  Harbin's knew that application would be acted on

in Michigan.  Harbin's did the same thing in regard to its credit application and that application was also accepted in Michigan.  Thereafter, for over 12 years each of Harbin's purchase orders for Steelcase product was sent to Steelcase in Grand Rapids.  Each purchase order was an offer.  Nearly all of these offers were transmitted to Steelcase's Grand Rapids location via Steelcase's EDI system.  Each offer was acknowledged and accepted by Steelcase in Grand Rapids, thereby creating multiple individual contacts in Michigan.  Harbin's questions concerning the status of orders, pricing, shipments, etc. were directed to Steelcase personnel in Grand Rapids.

A substantial majority of the goods purchased by Harbin's was manufactured by Steelcase in Grand Rapids.  The majority of those goods was then shipped to Harbin's by common carrier.  Under the terms of its agreements with Steelcase, Harbin's took title to, and risk of loss for the goods passed, when they were placed with the common carrier.  This occurred in Michigan.  Steelcase invoiced Harbin's for the goods from Grand Rapids.  While for most transactions Harbin's paid to a drop box in Atlanta, Georgia, on at least five occasions Harbin's had checks totaling over $75,000 delivered to Steelcase in Michigan.

Harbin's also regularly communicated with Steelcase personnel in Grand Rapids regarding its financial and credit arrangements.  This was done by letter, fax, email, overnight delivery, and telephone.  Some of those communications are attached to the Van Dyk Declaration as Exhibits H - DD.

On at least one occasion Harbin's representatives traveled to Grand Rapids in the company of Harbin's customers to meet with Steelcase officials and tour Steelcase manufacturing and design facilities.  That trip was not to explore creating a relationship with Steelcase or to end it, but was for the purpose of selling Steelcase product to the customers Harbin's brought to Grand Rapids.  It was at the heart of Harbin's relationship with Steelcase as

8

a Steelcase dealer. Can Harbin's legitimately contend that it was not "transacting business" while in Michigan?

The only way Harbin's can claim that it did not transact business in Michigan is if it focuses solely on its sales of product, and totally ignores (1) how and where it obtained that product; (2) how it arranged to pay for it; and (3) its obligations to Steelcase as a Steelcase dealer. Even if it tried to do so, Harbin's nevertheless has a hard time explaining its customer sales trip to Michigan to meet with Steelcase, (and in fact, in its papers filed with this Court it has chosen to ignore that trip altogether). Clearly the law allows for no such partial and incomplete view of a company's business.

In light of the inquiry set forth in ***Burger King*** as to whether the defendant "should reasonably anticipate being subject to suit" in Michigan ***Id***. at 475), the personal guaranties signed by Harbin's President, Michigan Harbin, Jr., are also instructive. (Van Dyk Declaration, Exhibits L and M). Those guaranties expressly state that Michigan law applies and that Mr. Harbin and his wife consented to the jurisdiction of Michigan courts. While they were personal guaranties, they guaranteed Harbin's Inc.'s financial obligations to Steelcase. Clearly the President of defendant, then and now, had to have anticipated suit in Michigan.

This Court should note the recent decision in ***Steelcase Inc. v Mar-Mol, Inc***, 210 F. Supp. 2d. 920 (W.D. Mich 2002). In the ***Mar-Mol*** case, Judge Quist denied a motion to dismiss for lack of personal jurisdiction by Steelcase dealers in Puerto Rico, Venezuela, and the Dominican Republic. Like this case, that case involved Steelcase's claims of non-payment for product against its dealers. Although there was also a claim of fraudulent conversion against one of the defendants, most of the facts concerning the relationship between Steelcase and its dealers, how they did business, and the nature and extent of the dealers' contacts in Michigan, are

identical or substantially similar to the facts here. See, for example the facts concerning the dealers set forth at 210 F. Supp. 927 - 929 and the Court's discussion of the significance of those facts at 210 F. Supp. 930 - 933. Like Harbin's here, in Mar-Mol the dealer defendants:

- Had a continuing multi-year relationship with Steelcase (***Id***. at 927);

- Submitted dealer applications to Steelcase (***Id***.);

- Transmitted purchase orders to Steelcase in Michigan, which were accepted in Michigan (***Id***. at 927 - 28);

- Most of the goods sold to the dealers were made in Michigan and title and risk of loss passed to defendant in Michigan (***Id***. at 928);

- The dealers regularly communicated with Steelcase in Michigan (***Id***. at 928 - 29);

- The dealers made trips to Michigan (***Id***. at 929);

- The dealers made payments in Michigan (***Id***. at 928).

After reviewing these very comparable facts, the Court in ***Mar-Mol*** rejected the same argument being made by Harbin's here and concluded:

"When considered along with the numerous and routine business contacts Defendants had with Steelcase in Michigan by letter, telephone, e-mail, and in person, Defendants' activities described above are more than sufficient to show that Defendants engaged in conduct having on-going and substantial consequences in Michigan. In other words, Defendants' contacts with Michigan are not so isolated or attenuated that assertion of personal jurisdiction over Defendants would offend due process. Defendants' attempt to paint their relationship with Steelcase as being focused solely upon sales of Steelcase products in Puerto Rico, Venezuela, and the Dominican Republic and having absolutely nothing to do with Michigan flies in the face of substantial evidence showing that Defendants spent a significant effort over many years exploiting their contacts with Steelcase in Michigan. ***Kerry Steel*** and ***Calphalon***, cited by Defendants in support of their position, are completely inapposite. Therefore, the purposeful availment requirement is satisfied, at least with respect to the Dealer Defendants. 210 F. Supp. at 932.

The ***Mar-Mol*** opinion is also significant because the Court distinguished the Sixth Circuit's opinion in ***Calphalon Corp v Rowlette***, 228 F.3d 718 (6th Cir. 2000). ***Calphalon*** involved a manufacturer's representative, not a dealer/distributor, a significantly different commercial relationship, and one which Judge Quist found to be an "important difference" (***Mar-Mol***, ***supra*** at 930). Judge Quist also focused on the fact that the ***Mar-Mol*** defendants had "reached out" to Steelcase in Michigan by applying for dealerships (***Id***.), and that they had "an extended commercial relationship with Steelcase" spanning many years (***Id***. at 931). Both of these sets of factors are equally true of Harbin's as well.

Plaintiff believes that ***Neogen Corp. v Neo Gen Screening, Inc***, 282 F.3d 883 (6th Cir. 2002) presents the Sixth Circuit's current thinking regarding how little contact is needed for a court to conclude that the defendant purposely availed itself of the privilege of acting within the forum state. There, defendant engaged in the business of performing diagnostic blood samples, and it had a website which consisted primarily of "passively posted information" like advertising its services and providing basic contact information. (***Id***. at 890). However, if someone engaged the defendant's services, they were given a password and could then access the test results on the website. The defendant welcomed business from any state. On 14 occasions in 1999, defendant had tested blood samples for Michigan customers and expected a similar number of tests in future years. These minimal contacts were enough for the Sixth Circuit to find a "purposeful availment" and thus personal jurisdiction. While ***Neogen*** focuses on the customer side of transacting business, and not the supplier side as we have here, its holding is instructive as to how little is required to satisfy the purposeful availment prong of the due process test.

Here, Harbin's contacts with Michigan were much more:  it reached out to contact Steelcase in Michigan to become a Steelcase dealer; it reached out to Steelcase in Michigan for credit terms; it submitted purchase orders to be processed and accepted in Grand Rapids; it took title to large quantities of goods in Michigan; it regularly communicated with Steelcase on credit and other terms in Michigan; it made payments to Steelcase in Michigan; its President made guaranties enforceable in Michigan; and its officers and customers visited Michigan in connection with its dealership status and sales.  Those contacts cannot be characterized as random, fortuitous or attenuated.  Accordingly, an analysis of the totality of the circumstances surrounding Harbin's over 12 year relationship as a Steelcase dealer clearly reveals Harbin's purposeful availment to the rights and privileges of conducting business in Michigan.

**B.**      **Steelcase's Cause of Action Arises from Defendant's Contacts with Michigan.**

Steelcase alleges that Harbin's breached its contract with Steelcase by failing to pay amounts due for product purchased.  "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]."  *Southern Machinery v Mohasco Industries, Inc,* 401 F.2d 374, 384 No. 29.

The Sixth Circuit has made it clear that under these circumstances, contract claims satisfy the "arising from" test, since a defendant's "entering of a contractual relationship, with [a resident] corporation is necessarily the very soil from which the action for breach grew.  The intimate relationship between the jurisdictional basis and the cause of action cannot be denied. . . ."  *In-Flight Devices Corp. v Van Dusen Air, Inc,* 466 F.2d 220, 229 (6th Cir. 1972).

Here, Steelcase's claim clearly arises as a result of Harbin's contact with Michigan.  Harbin's ordered all of its goods in Michigan by transmitting a purchase order to Grand Rapids via EDI.  Harbin's obligated itself to perform each time Steelcase accepted a

purchase order. All of those purchase orders were accepted in Grand Rapids. Most of those goods were manufactured, packaged and delivered in Michigan. Harbin's took title to those goods in Michigan. Harbin's was obligated to pay for those goods under the terms of the purchase orders and Michigan law. It did not, and it has been sued.

**C.**    **Defendant Cannot Show That There Are Other Considerations That Render Jurisdiction Unreasonable.**

Once the court determines that the first two criteria are met, an inference of overall fairness arises. "[O]nly the unusual case will not meet this third criterion." *First Nat'l Bank v J.W. Brewer Tire Co*, 680 F.2d 1123, 1126 (6th Cir. 1982). A defendant must then make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Those considerations include: "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v Superior Court*, 480 U.S. 102, 113; 107 S. Ct. 1026 (1987). In light of those considerations, defendant cannot show that personal jurisdiction here is unreasonable.

First, the burden on Harbin's to show unreasonableness is onerous. "[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wien Air Alaska, Inc. v Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Furthermore, "[a]bsent compelling considerations, a defendant who has purposefully derived commercial benefit from his affiliations in a forum may not defeat jurisdiction there simply because of his adversary's greater wealth." *Burger King*, 471 U.S. at 483 n. 25. There are no such compelling considerations here, and none are even asserted by Harbin's.

Also, the interests of Steelcase and the State of Michigan both lend to the reasonableness of having the proceeding in a Michigan forum. Steelcase is a Michigan citizen seeking relief for an injury. Michigan has a strong interest in providing a forum for the

resolution of plaintiff's claims, as well as in protecting Michigan citizens from out-of-state wrongdoers.  See *Burger King*, 471 U.S. at 473 ("A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.")  In this case, considering the circumstances discussed above, this Court, in asserting personal jurisdiction over Harbin's, will not be acting unreasonably.

Each of the constitutional due process standards are met in this case.  This Court has personal jurisdiction over defendant Harbin's.

## II.    <u>Venue Is Proper In This District.</u>

Defendant Harbin's next moves for dismissal on the basis of improper venue. Defendant is mistaken.  Venue is proper in this Court, and defendant urges the use of an improper standard specifically repudiated by the Sixth Circuit in *First of Michigan v Bramlet* 141 F.3d 260 (6th Cir. 1998).

Venue in the Western District of Michigan is proper under 28 U.S.C. § 1391(a)(2).  That section was recently amended to expand venue in diversity cases.  See *First of Michigan v Bramlet, supra* at 263-64.  Congress specifically provided, in the revised 28 U.S.C. § 1391(a)(2), that a civil action may be brought in ". . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . ."  28 U.S.C. § 1391(a)(2) (emphasis added).  In analyzing this language the Sixth Circuit held that a plaintiff may choose between forums that have a connection to its claim and is not required to select the forum with the greatest degree of contact.  *Bramlet, supra* at 263.  Thus, defendant Harbin's is simply wrong when it contends that "venue is proper in the district having the most significant ties to the claim."  (Defendant's Brief at 5).

This Court should also be guided by the opinion in *Steelcase v Mar-Mol Co., Inc*, 210 F. Supp. 2d. 920, 936 (WD Mich. 2002) discussed earlier, in which the court also denied a

motion to dismiss for improper venue. In **Mar-Mol**, Judge Quist concluded that "the Western District of Michigan easily meets the 'substantial connection' requirement of § 1391(a)(2) as discussed in **Bramlet (supra)** with respect to each of Steelcase's claims." (**Mar-Mol** at 937). In support of that conclusion the Court noted the following:

- Steelcase is headquartered in the Western District;

- Defendants transmitted their purchase orders to Steelcase in Michigan;

- Steelcase accepted the purchase orders in Michigan;

- Most of the goods sold to defendants were manufactured in Michigan;

- Title and risk of loss to those goods transferred in Michigan;

- Defendants paid for the goods in Michigan.

(**Id**.).

All of the above factors are true and applicable here, including the payment for some of the goods. Just as it did on the subject of jurisdiction, the **Mar-Mol** opinion, based on highly similar facts, provides persuasive authority that defendant's venue motion should be denied.

In addition, courts have repeatedly found that facts relevant to the personal jurisdiction analysis are sufficient to satisfy the substantial connection test in Bramlet for proper venue. See **Alta Analytics, Inc. v Muuss**, 75 F. Supp. 2d 773, 783 (S.D. Ohio 1999) ("personal jurisdiction is consistent with a court's maintaining venue"); **Pakideh v Ahadi**, No. 99-CV-74424-DT, 2000 WL 545896, at *6 (E.D. Mich. Apr. 7, 2000); **Dorsey v American Golf Corp**, 98 F. Supp. 2d 812, 816 (E.D. Mich. 2000). One case, **Alta**, **supra**, went so far to say that "the Court's valid exercise of personal jurisdiction over Defendant defeats any claims of improper venue." **Alta Analytics**, **supra** at 783. Venue in this district is clearly proper.

## III.     **Defendant's Motion To Transfer Under 28 U.S.C. § 1404 Should Be Denied.**

Defendant next contends that venue should be transferred to the Middle District of Alabama under 28 U.S.C. § 1404(a).  Defendant has made <u>no showing</u> that such a transfer would serve the convenience of the parties or witnesses or the interest of justice, let alone a showing sufficiently strong to overcome the presumption in favor of plaintiff's choice of venue.

### A.     **Plaintiff's Choice of Forum Should Prevail Unless the Balance of Convenience Strongly Favors Transfer.**

This Court has made it clear that defendant, as the party moving for transfer of venue pursuant to 28 U.S.C. § 1401(a), bears the "substantial burden" of persuading the Court that transfer is appropriate and should be granted.  ***Evans Tempcom, Inc. v Inex Indus., Inc*,** 778 F. Supp. 371, 377 (W.D. Mich. 1990).  As this Court has emphasized, "[p]laintiff's choice of forum is to be given considerable weight and the balance of convenience should be strongly in favor of a transfer before one will be granted." ***Almeida v Green*,** No. 1:94-CV-651, 1995 WL 113493, at *1 (W.D. Mich. Jan. 20, 1995); accord ***Sun Oil Co. v Lederle*,** 199 F.2d 423, 424 (6th Cir. 1952) ("[U]nless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."); ***Evans Tempcom*,** 778 F. Supp. at 377 (denying transfer because defendant failed to demonstrate "a strong balance of convenience in its favor"). Harbin's has not and cannot make such a showing here.

### B.     **Defendant Has Made No Showing to Justify a Transfer of Venue.**

In evaluating a motion to transfer venue, a district court should consider (1) the convenience of the parties, (2) the convenience of potential witnesses, and (3) other public interest concerns, such as systemic integrity and fairness.  ***Moses v Bus. Card Express, Inc*,** 929 F.2d 1131, 1137 (6th Cir. 1991); ***accord Almeida*,** 1995 WL 113493, at *1.  Harbin's has failed

to show that these considerations weigh in its favor, much less that they weigh so strongly as to justify transferring venue from plaintiff's chosen forum.

      1.    __The Convenience of the Parties__.  The convenience of the parties weighs heavily against a transfer of this case to the District of Alabama.  The plaintiff's choice of forum is entitled to substantial deference, especially where, as here, the plaintiff has filed suit in the jurisdiction in which it resides.  ***Thomas v Home Depot, U.S.A., Inc***, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) ("[C]ourts grant substantial deference to a plaintiff's chosen forum, especially where the plaintiff lives in his chosen jurisdiction."); ***see also, e.g***., ***Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v Continental Elevator Co***, No. 98-5311, 1999 U.S. Dist. LEXIS 7062, at *8 (E.D. Pa. May 12, 1999) (same); ***Boyd v Snyder***, 44 F. Supp. 2d 966, 969 (N.D. Ill. 1999) (same).  There is no issue that Steelcase is headquartered in Grand Rapids.  Therefore, Steelcase is entitled to the deference discussed in ***Home Depot, supra***.

      2.    __The Convenience of Witnesses.__ The convenience of the witnesses also weighs in favor of keeping the case in the Western District of Michigan.  Defendant contends that the "witnesses for Steelcase are likely to be located in either Alabama or Georgia. . . ."  (Defendant's Brief, p. 6).  This is untrue.  Steelcase has identified eight witnesses who are likely to testify in this case, all of whom either live or work regularly in the Grand Rapids area.  (O'Connor Declaration, ¶ 6).  None of them live or work in Georgia or Alabama.

      In contrast to that showing, defendant does not identify a single witness who will testify for defendant.  In fact, the only representative of Harbin's who ever had any

significant contact or communication with Steelcase was its President, Michael Harbin, Jr.

Defendant claims that all the documents necessary for determination of the issues raised by Steelcase's Complaint are located in Alabama. (Defendant's Brief, p. 6). This, too, is untrue. The documents Steelcase will rely on to prove its case are located in Grand Rapids. (O'Connor, ¶ 3). Presumably defendant has its own documents which are in Alabama. But defendant makes no showing that its documents are more voluminous than Steelcase's, or that documents are in any way otherwise relevant to the choice of forum.

**3.** __The Interest of Justice.__ Here again, defendant makes no showing that the interests of justice dictate a transfer of venue. To the contrary, plaintiff believes that the interests of justice are served by this Court retaining venue.

First, a significant factor bearing on the interests of justice is the speed with which a case will likely be resolved. See ***Fannin v Jones*** 229 F.2d 368, 369 (6th Cir. 1956). According to the 2003 Federal Court Management Statistics, published by the Administrative Office of the United States Courts, judges in the Middle District of Alabama had an average of 448 filings assigned to them compared to only 400 per judge in the Western District of Michigan. There was an average of 467 cases pending per judge in the Middle District of Alabama, while there were only 346 cases pending per judge in this District. The median time from filing to disposition in civil cases in the Middle District of Alabama was 9.2 months, whereas the median time from filing to disposition in civil cases in this District was only 8.3 months. In this District, only 23 cases (2%) are older than 3 years. In the Middle District of Alabama, however, that

number is more than tripled at 79 cases, which totals 6.2% of that Districts civil caseload. These statistics indicate that cases tend to reach a disposition faster in this District than they do in the Middle District of Alabama.

A second reason is this Court's extensive use of ADR, most specifically voluntary facilitative mediations. The Court can take judicial notice that the Court's settlement rate in facilitative mediation is approximately 70%. This is a case in which the parties will clearly benefit from an early settlement. The fact that there is an established and respected process in this district to mediate cases at an early stage weighs in favor of keeping the case here.

### Summary

Harbin's cannot meet the "substantial burden" of proving that this action should be transferred. The balance of convenience clearly weighs in favor of Steelcase. Even if it did not, Harbin's certainly has not shown that the balance is "strongly in [its] favor." ***Sun Oil Co. v Lederle***, 199 F.2d 423, 424 (6th Cir. 1952). In such a case, the "plaintiff's choice of forum should rarely be disturbed." Id. Accordingly, Harbin's motion to transfer venue must be denied.

### Conclusion

For the reason discussed above, defendant Harbin's Inc.'s motion to dismiss for lack of personal jurisdiction and venue, and alternative motion to transfer venue, should all be denied.

Miller, Johnson, Snell & Cummiskey, p.l.c.
Attorneys for Plaintiff Steelcase Inc.

Dated: March ____, 2004        By _____/s/_____
                                    Jon G. March (P17065)
                                    Martin T. Shepherd (P65331)

Business Address:
Calder Plaza Building
250 Monroe Ave. N.W. Suite 800
PO Box 306
Grand Rapids, MI 49501-0306
Telephone: (616) 831-1700