UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEELCASE INC., a Michigan
corporation,

        Plaintiff,

v

HARBIN'S INC., an
Alabama corporation,

        Defendant.

_____/

Case No. 1:04CV0026

Honorable Robert Holmes Bell
Chief, U.S. District Judge

## DECLARATION OF JAMES VAN DYK PURSUANT TO 28 U.S.C. § 1746

I, James Van Dyk, declare as follows:

1. I am providing this declaration in support of Plaintiff, Steelcase, Inc.'s ("Steelcase") Brief In Opposition to Defendant, Harbin's Inc's Motion to Dismiss For Lack of Personal Jurisdiction and For Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(2) & (3) or in the Alternate Transfer of Venue. If sworn as a witness, I could competently testify to the facts set forth below based on my own personal knowledge and/or the records of Steelcase kept in the normal course of its business.

2. I am employed by Steelcase, Inc. ("Steelcase") as Manager of Corporate Credit. I have been in that position since October, 2002. Before that I was a Steelcase Dealer Business Consultant. In my current position, I am responsible for all credit transactions with Steelcase dealers.

3. Steelcase has its corporate headquarters in Grand Rapids, Michigan. All records pertaining to financial transactions between Steelcase and its dealers are maintained in

Grand Rapids, Michigan. In addition to its corporate headquarters, Steelcase also has substantial design, marketing, and manufacturing operations in and around Grand Rapids. Although Steelcase has manufacturing facilities throughout the world, most of those facilities are in Grand Rapids.

4. Steelcase sells its products throughout the world through a network of independent dealers. The dealers purchase products from Steelcase and resell them to the end-user. Steelcase's dealer relations functions and its financial and credit functions concerning its dealers are located in Grand Rapids, Michigan. Steelcase personnel responsible for those functions have regular contact with Steelcase dealers.

5. Harbin's Inc. ("Harbin's") was a Steelcase dealer from 1991 until November 18, 2003, when Steelcase revoked Harbin's dealership status because of its failure to pay for product. Michael Harbin, Jr. is and has been President of Harbin's since about 1990.

6. Steelcase records establish that Harbin's submitted a Steelcase Dealership Application, dated December 10, 1990, signed by Michael Harbin, Jr. on January 17, 1991 and returned to the Steelcase Dealer Development office in Grand Rapids. The Application was received in the Steelcase Credit Department in Grand Rapids, Michigan on February 15, 1991. In order to become effective, the Dealership Application had to be accepted by several specified Steelcase officials, culminating in the Steelcase Senior Vice-President, Sales and Senior Vice-President, Finance. This acceptance was accomplished in Grand Rapids on March 29, 1991. (A copy of that Dealership Application is attached as Exhibit A.) (There appears to have been an earlier Dealership Application dated February 27, 1990, but that Application was either not acted upon by Steelcase or was superseded by the subsequent Application.)

2

7. On March 30, 1990, Harbin's applied for a line of credit with Steelcase by submitting a Credit Application, signed by Michael Harbin, Jr. (a copy of which is attached as Exhibit B). All such credit applications were submitted to Steelcase in Grand Rapids, Michigan for approval after a review of the applicant's financial information. The Harbin's Credit Application and an open line of credit with a dollar maximum was approved by Steelcase in March, 1991, (Exhibit C).

8. According to the Credit Application, Harbin's agreed to abide by Steelcase's Credit Terms and Policies and Shipping Terms as they then existed and "any changes thereto that may take place from time to time in the future." Those Terms and Policies subsequently were called "U.S. Dealer Terms of Sale". The U.S. Dealer Terms of Sale that governed Harbin's dealership agreement with Steelcase at and before its dealership status was revoked on November 18, 2003, are attached here as Exhibit D.

9. Pursuant to the U.S. Dealer Terms of Sale, to remain a Steelcase dealer, Harbin's was obligated to submit to Steelcase headquarters, in Grand Rapids, a yearly financial statement. Harbin's did send yearly financial statements to Steelcase in Grand Rapids, Michigan. Yearly financial statements for the years 1999, 2000 and 2001 are attached here as Exhibits E - G. Each of these financial statements was mailed or faxed to Steelcase in Grand Rapids for Steelcase to review and analysis there. All credit issues and decisions were made by Steelcase in Grand Rapids.

10. Pursuant to its agreements with Steelcase, Harbin's regularly purchased Steelcase manufactured goods. Virtually all of Harbin's purchase orders for Steelcase product were submitted via Steelcase's electronic data interface ("EDI") system. The EDI system is a proprietary Steelcase system, and its use is mandated by all Steelcase dealers. Under the EDI

system, every purchase order submitted by Harbin's was processed at Steelcase's Grand Rapids, Michigan office. Steelcase transmitted an acknowledgement to Harbin's via EDI when the purchase order was accepted. Those acknowledgements originated and were generated in Grand Rapids. Each purchase order that Steelcase accepted was an individual contract.

11. Pursuant to each individual purchase order, Steelcase products were then shipped from a Steelcase facility to Harbin's in Alabama. Approximately 60% to 70% of the Steelcase products sold to Harbin's were manufactured, stored, and shipped from Michigan. Only a very limited amount of Harbin's orders were shipped from Alabama. Steelcase does have one manufacturing facility in Alabama, but it produces a very limited scope of Steelcase product, modular office walls.

12. According to the shipping terms of Steelcase's U.S. Dealer Terms of Sale, which governed the credit arrangement and shipping terms between Harbin's and Steelcase, title and risk of loss on the Steelcase product transferred from Steelcase to Harbin's either (1) when the goods were delivered to a common carrier in Grand Rapids or (2) if goods were shipped by Steelcase trucks, when the goods reached their destination. Steelcase shipments to Harbin's from the Steelcase Grand Rapids facilities were regularly and most often shipped via common carrier. On those shipments, Harbin's took title in Michigan and risk of loss passed to Harbin's in Michigan.

13. Steelcase sent all of its invoices to Harbin's for product sold from the Steelcase Grand Rapids headquarters. Harbin's initially made payment to a Steelcase facility in Georgia.

14. After Harbin's defaulted on its payments to Steelcase and incurred past due balances, the parties agreed to a payment arrangement whereby Steelcase would ship an

4

order to Harbin's only upon payment by Harbin's of double the cost of the order to be shipped. Steelcase would apply half of the amount paid to the current amount owed and half to Harbin's past due balance. Payments under this arrangement were all sent directly to Steelcase at its Grand Rapids, Michigan headquarters, to the attention of Marvis James, the Steelcase Corporate Credit Manager responsible for Harbin's account. (Copies of those payment checks and the transmittal documents are attached as exhibits to Mr. James' Declaration.)

15. In its capacity as a Steelcase dealer, Harbin's has contacted Steelcase's headquarters in Grand Rapids, Michigan on a regular and on-going basis, by telephone, facsimile, e-mail, and mail, for a variety of reasons, including communications regarding orders, deliveries, etc. The following exhibits attached to this declaration are copies of some of the documents and e-mail transmissions received by Steelcase in Grand Rapids, Michigan from Harbin's regarding Harbin's financial arrangements and failure to pay for product:

- A letter signed by Michael Harbin, dated September 11, 1990, to Marvis James, Steelcase, Grand Rapids, regarding Harbin's financial statements, attached as Exhibit H;

- A letter signed by Michael Harbin, dated September 18, 1991, to Marvis James, Steelcase, Grand Rapids, confirming a telephone conversation and a decision not to enroll in a SFSI plan, attached as Exhibit I;

- A letter signed by Michael Harbin, dated April 11, 1991, to Marvis James, Steelcase, Grand Rapids, regarding Harbin's status as a Steelcase dealer, attached as Exhibit J;

5

- A fax from Michael Harbin, dated May 26, 1993, to Marvin James, Steelcase, Grand Rapids, regarding a letter of credit from Sterling Bank, attached as Exhibit K;

- Personal guaranties signed by Michael and Hope Harbin, dated June 10, 1993 and August 4, 1993, and forwarded to Steelcase in Grand Rapids, Michigan, attached as Exhibits L and M;

- An email from Michael Harbin to James ("Randy") Essenberg, Steelcase, Grand Rapids, dated October 7, 2002, regarding finance charges on Harbin's account and accounts receivable, attached as Exhibit N;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated November 5, 2002, regarding disputed charges to Harbin's account, attached as Exhibit O;

- Emails from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated November 5, 2002, regarding re-cap of payments attached as Exhibit P;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated November 8, 2002, regarding auditing statement for errors, attached as Exhibit Q;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated November 11, 2002, past due amount and invoice review, attached as Exhibit R;

- An email from Michael Harbin, dated November 20, 2002, to Marvis James, Steelcase, Grand Rapids, asking for identity of James' supervisor, attached as Exhibit S;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated December 12, 2002, regarding check to be mailed, attached as Exhibit T;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated December 19, 2002, regarding a voicemail message from Michael Harbin, attached as Exhibit U;

- A fax from Harbin's, dated December 31, 2002, of a check dated December 31, 2003 in the amount of $16,791.32, attached as Exhibit V;

- Two emails from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated January 3, 2003, regarding a new line of credit, attached as Exhibit W;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated January 7, 2003, regarding a line of credit from Colonial Bank, attached as Exhibit X;

- A fax from Harbin's to Steelcase, Grand Rapids, dated January 8, 2003, regarding inventory and accounts receivable trial balances, attached as Exhibit Y;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated January 14, 2003, regarding meeting with bank, attached as Exhibit Z;

- An email from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated January 22, 2003, regarding availability, attached as Exhibit AA;

- A fax from Harbin's to Marvis James, Steelcase, Grand Rapids, dated January 22, 2003, regarding Harbin's line of credit at Colonial Bank, attached as Exhibit BB;

- A fax from Harbin's to Marvis James, Steelcase, Grand Rapids, dated January 28, 2003, containing Harbin's bank transactions and financial statements, attached as Exhibit CC;

- A fax from Michael Harbin to Marvis James, Steelcase, Grand Rapids, dated January 31, 2003, containing Harbin's accounts receivable and inventory, attached as Exhibit DD;

16. On February 23-24, 2000, Harbin's representatives Michael Harbin, Jr., President of Harbin's, and Jacque Parks, along with representatives of Harbin's customers, traveled to Steelcase headquarters in Grand Rapids, Michigan. During the trip Harbin and Parks met with several Steelcase representatives regarding a potential sale of Steelcase goods to Alfa Insurance. Harbin and Parks traveled to Grand Rapids on Steelcase's company aircraft. On February 24, 2000, Harbin and Parks spent approximately eight (8) hours in meetings at Steelcase headquarters, design studios, and manufacturing facilities, all in Grand Rapids,

Michigan. The travel information and itinerary from Harbin and Parks February, 2000 trip to Steelcase headquarters is attached here as Exhibit EE.

17. Steelcase revoked Harbin's dealership status on November 18, 2003, when Harbin's defaulted on its payments for products it had purchased from Steelcase. The termination decision was made in Grand Rapids. The impact of a default on payment for Steelcase product sold to dealers is felt by the entire company, including its Michigan headquarters and facilities.

I declare under penalty of perjury that the foregoing is true and correct.

_____
James Van Dyk