

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA
DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:

HOPE DUNCAN HARBIN                    )

AND                                  )

                              )    CASE NO. DR-2001-1310

MICHAEL G. HARBIN, JR.                )

Wife and Husband.

8-2-02

## FINAL DECREE OF DIVORCE

THIS IS a divorce filed by Hope Duncan Harbin, the Wife, on October 31, 2001. The matter came on for trial on August 1, 2002 at which time the Honorable J. Floyd Minor, Esq. represented the Husband, Michael G. Harbin, and the Honorable John A. Henig, Jr., Esq. represented the Wife, Hope Duncan Harbin. Although sufficient proof was put on record to establish jurisdiction and grounds for divorce, insufficient time was available for the completion of all matters with regard to the disposition of assets, custody of the parties' minor children, child support and alimony. Those items will be addressed by this Court at a later date.

The parties herein have two (2) children ages nine (9) and seven (7) years. There is a Consent Pendente Lite Order entered in this case which shall remain in full force and effect.

All other orders entered by this Court shall remain in full force and effect until this matter can be fully resolved at a later date.

There were other stipulations which are to be incorporated into this Decree. Therefore, upon consideration of the sworn testimony presented herein and the stipulation of the parties, the Court does find that there does exists a valid marriage between the parties and that this Court has jurisdiction over the parties and of this cause of action,

EXHIBIT
# 6

and that the Wife is entitled to a divorce. It is, therefore, ORDERED, ADJUDGED and DECREED as follows:

1. The bonds of matrimony heretofore existing between the parties be and the same are hereby dissolved, and they are each forever divorced from the other.

2. That neither of the parties shall again marry, except to each other, until the expiration of sixty (60) days after the date of this Decree of Divorce; and if an appeal is taken, then neither party again shall marry, except to each other during the dependency of such appeal.

3. The Consent Pendente Lite Agreement and Order entered on the 27th day of December, 2001 shall remain in full force and effect and the parties shall abide by the terms thereof. The Husband, Michael G. Harbin, shall have the following overnight visitation with the minor children: Sunday, August 4, 2002; Thursday, August 8, 2002; Friday, August 9, 2002; Saturday, August 10, 2002; Sunday, August 11, 2002, exchanging the minor children with the Wife, Hope Duncan Harbin, at the Santa Rosa Beach, Florida duplex at 12:00 noon on Monday, August 12, 2002; and Sunday, August 18, 2002; returning the minor children to the Wife's home on Augusta Avenue, Montgomery, Alabama, by 5:00 p.m., Monday, August 19, 2002. The parties shall work with Dr. Karl Kirkland to establish a visitation schedule with the minor children once the children begin school on August 20, 2002 and said agreement is to be reduced to writing and approved by the Court.

2

4.      This Court's Restraining Order entered on the 5th day of November, 2001 shall remain in full force and effect and the parties shall abide by said Order.

5.      All other orders of the Court shall remain in full force and effect.

6.      The Court hereby reserves jurisdiction for the purpose of determining all matters in controversy following completion of the trial in this matter.

7.      The parties agree that the minor children will attend The Montgomery Academy and will remain in Montgomery County, Alabama, pending final hearing in this matter.

8.      The costs of these proceedings have been prepaid and will be taxed at a later date.

DONE this the 2nd day of August, 2002.

_____
W. MARK ANDERSON, III
Circuit Judge

cc:     John A. Henig, Jr., Esq.
        J. Floyd Minor, Esq.

---

## CERTIFICATE

STATE OF ALABAMA          *
MONTGOMERY COUNTY       *

I, as Deputy Register, Montgomery County Circuit Court, do hereby certify that the within is a complete, true and correct copy of the Divorce Decree on file in said office.

Witness my hand and the seal of the Court is affixed, this 2 day of August, 2002.

_____
Fran Cycmaneck
Deputy Register, Montgomery County
Circuit Court, Domestic Relations Div.

3

7

*Henig*

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
DOMESTIC RELATIONS DIVISION

12-11-02

In Re The Marriage of          )
                               )
HOPE DUNCAN HARBIN             )
                               )
      and                      )       CASE NO. DR-2001-1310
                               )
MICHAEL G. HARBIN, JR.         )
                               )
Formerly Husband and Wife      )


### O R D E R

Mr. and Mrs. Harbin were divorced on August 2nd.  The Court reserved jurisdiction to determine property, custody, support, and visitation.  The Court heard those issues on October 17th and 18th.

The public policy of this state favors joint custody.  Article 7 of Title 30 of our Code sets out certain considerations relating to whether joint custody should be ordered.  Mr. Harbin wants joint custody.  Mrs. Harbin does not.  This Court prefers to order joint legal custody in most cases.  In this case, it does not appear to be in the best interest of the children to do so.

Section 30-3-152 requires the Court to consider:

"(1)  The agreement or lack of agreement of the parents on joint custody."  There is no agreement.

"(2)  The past and present ability of the parents to cooperate with each other and make decisions jointly."  They have not been able to agree, even having difficulty when mediating through Dr.

EXHIBIT
# 7

Kirkland.

"(3)  The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent." It seems as if Mrs. Harbin has more difficulty with this than Mr. Harbin.

"(4)  Any history of or potential for child abuse, spouse abuse, or kidnapping." The Court sees none by either party.

"(5)  The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody." At present, both parents live in Montgomery and this is not a factor.

It is the Court's conclusion, therefore, that neither joint legal custody nor joint physical custody would work. The Court does not doubt Mr. Harbin's love for his children but it is satisfied that Mrs. Harbin has been their primary care giver since their birth and that she should receive sole legal and physical custody.

The evidence indicates that there is a strong possibility that Mrs. Harbin may move to Atlanta. Much of her financial evidence is premised upon the costs in that city. The Court understands that such a move appears to offer a means of escape for Mrs. Harbin from unhappy memories and a difficult social situation. Nevertheless, even though the Court will not interfere at this point with any such plans, it believes that Mrs. Harbin should

2

think long and hard before "bailing out" of Montgomery and depriving her children of the roots which they have put down here. The short-term relief from such a move may not compensate for the long-term damage and difficulties.

Living at a distance of 175 miles or so will cause increased difficulty and increased expense related to visitation. It will engender more conflict between the parties and may result in more litigation, something to which neither party should subject themselves or their children, if it can be avoided. There has been time and tension and anguish enough, already.

Mrs. Harbin has presented some convincing evidence that Mr. Harbin suffers from certain problems which, for his own good, he needs to get under control. They do not seem, however, to pose any threat to health and welfare of the children, at least at this time.

These children need both parents. Dr. Kirkland, at the Court's request, submitted his recommendation in early September. It does not provide as much specified time for Mr. Harbin as he has been enjoying under the pendente lite arrangement. What the Court provides is not intended to be a maximum but a minimum.

As to regular visitation, he shall have the children on alternate weekends from the close of the school day on Friday and he shall return them to school on Monday morning. During the weeks from the start of school sometime in August until it lets out in

3

lieu of a baby-sitter but this shall not be taken to the extreme. Grandparents shall not be considered baby-sitters.

If Mrs. Harbin should move, all of these visitation arrangements will have to be reconsidered and adjusted. Such a move would be considered a change in circumstances.

Moving on to property issues, Mrs. Harbin should receive the marital home. For her own protection, she should have the responsibility of making the mortgage payments. The first mortgage ($148,000) is a legitimate debt of both parties. The second mortgage ($65,000) appears to have produced funds used by Mr. Harbin for his own purposes, yet her (and the children's) home is at risk if he fails to pay it. Hence, until that mortgage is paid off, she should receive sufficient periodic alimony to assure its payment.

Mr. Harbin owns interests in several other properties but the only one that needs the Court's consideration is the Seagrove Beach house, titled in his name alone. That was appraised for $520,000 in June 2001. Mrs. Harbin believes the first mortgage to be about $270,000 (her exhibit 107). There is a second mortgage of about $80,000. This would leave an equity of about $170,000. Mrs. Harbin wants this duplex. It has produced some income but it is questionable as to whether she has the time or expertise to manage it. Mr. Harbin says that he needs the equity to raise cash to reinvigorate his business. The best solution would seem to be to

5

award him the beach duplex but dedicate half of the equity to Mrs. Harbin. If he paid off the $65,000 owed on the home second mortgage, and gave her another $20,000 in cash, he still would have at least $85,000 for his business purposes. That also would reduce his periodic alimony by $500.00 per month.

Mr. Harbin has substantial financial assets and liabilities related to Harbins, Inc., and other business related to his family's company. Mrs. Harbin wants a share of this. The Court does not believe that such an award would be of any value to her whereas it would cause considerable difficulties to Mr. Harbin and would be cause for further disagreement between the parties. Consequently, Mrs. Harbin will be awarded no interest in those business properties.

Passing on to her financial needs, she has submitted a budget of $6,741.00 (her Exhibit 68). The Court is satisfied that she easily can spend this much. Whether this much is reasonable and necessary is another issue. As recognized earlier, some of these expenses are based upon Atlanta costs. For instance, she shows a mortgage payment of $1,800 whereas her Montgomery payment (1st mortgage only) is about $1,200. She has over $950 per month in the "personal expenses" category; about $700 per month for food for herself and two children, when the children will be spending a good bit of time eating with their father. The Court could "nickel and dime" her about many other items ($59 for internet service when

6

att.net is available for $10.95, etc.) but some things are not included, such as the second mortgage payment and private school tuition.

Mrs. Harbin and the children should not be subjected to a radical reduction in their standard of living because Mr. Harbin decided to leave home and take up with someone else. All things considered, disregarding the second mortgage, $6,000 per month is not an unreasonable amount for the support of her and the children in a manner relatively near to what they have known during the marriage. Where is the money to come from?

According to Mrs. Harbin's CS-41, she has a gross monthly income of about $1,900. Although she has made much more (at least on paper) at Harbin's, it will be difficult for her, with two dependent children to earn significantly more than she is earning now. Hence, there is about a $4,000.00 shortfall between what she can earn and what they need.

Mr. Harbin's CS-41 shows a gross monthly income in excess of $5,900.00. He, too, has made a lot more in the past. He has run through a large sum of capital since the death of his father, even since the filing of these proceedings. Mrs. Harbin believes that he is not disclosing his actual income. His business has suffered over the last year and is suffocated by almost unmanageable debt, if he is to be believed. If his figures are accepted, under the Guidelines, child support should be at $968.00 per month with his

7

paying the health insurance on the children. Mrs. Harbin still would be over $3,000 short of what she needs to maintain reasonably the same standard of living she and the children have enjoyed.

If the Court accepts the parties' proffered incomes, she is earning about $24,000 per year and he is earning about $72,000 per year. Their $96,000 total income works out to $8,000 per month for four people. Spreading that among the four of them gives $2,000 each, with the share of Mrs. Harbin and the children being three-fourths, *i.e.* $6,000, further confirmation of her estimated needs.

Mr. Harbin has a far greater capability to restore his income to the $120,000 or so that he once earned than Mrs. Harbin has to increase her income appreciably. The Court is satisfied that he can pay periodic alimony of $3,000.00 per month.

It is, therefore, **ORDERED, ADJUDGED AND DECREED** as follows:

1. That Mrs. Harbin is granted sole legal and physical custody of the children, subject to Mr. Harbin's reasonable rights of visitation as set out below.

2. That, beginning January 1, 2003, Mr. Harbin shall pay child support to Mrs. Harbin of $1,000.00 per month for the support of the children.

3. That reference is hereby made to a separate Order entitled **"Order of Continuing Income Withholding for Support"**, the entry of which is required of this Court by the provisions of Section 30-3-

8

61 of the Code of Alabama and which is specifically incorporated herein as a part of this Decree.

4. That Mr. Harbin shall maintain health insurance coverage on the children. Any non-covered medical, dental, orthodontic, ophthalmic, or counseling expenses shall be paid 75% by Mr. Harbin and 25% by Mrs. Harbin.

5. That Mrs. Harbin is awarded the former marital home at 1236 Augusta Avenue in Montgomery, subject to the present first and second mortgages on said home. Mr. Harbin shall be responsible for all mortgage payments coming due on or before December 31, 2002, and shall hold Mrs. Harbin harmless from any liability for them. Mrs. Harbin shall be responsible for all mortgage payments coming due on or after January 1, 2003, and shall hold Mr. Harbin harmless from any liability for them. Within thirty days of the date of this Order, Mr. Harbin shall execute a quit-claim deed (to be prepared by Mr. Henig) conveying his interest in the Augusta Avenue home to Mrs. Harbin. If he should fail to do so, the Deputy Register shall issue a Register's Deed conveying his interest to her.

6. That Mrs. Harbin is awarded a one-half interest in the beach home at Seagrove Beach, Florida. Upon payment of the sum of $85,000.00, however, she shall convey her interest in the property to Mr. Harbin and, if she should fail to do so, the Deputy Register is authorized to execute a Register's deed conveying her interest

to him.  Mrs. Harbin shall cooperate with Mr. Harbin in the execution of any documents necessary for him to withdraw sufficient funds from the equity in the beach home so as to pay the $85,000.00 to Mrs. Harbin.  Mr. Harbin shall be responsible for all mortgage payments, insurance, taxes, maintenance and repairs on said property and shall hold Mrs. Harbin harmless from any further liability thereon.

7.  That, beginning January 1, 2002, Mr. Harbin shall pay periodic alimony to Mrs. Harbin of $3,000.00 per month, which payment shall continue until her death, remarriage or otherwise terminated by law.  On the first day of the month following the payment of the $85,000.00 awarded in paragraph 6, however, the amount of such payment shall be reduced to $2,500.00 per month.

8.  That Mr. Harbin is awarded all of his stock and other interest in Harbin's Inc., and his related business enterprises and Mrs. Harbin is divested of any interest in any of them.

9.  That if Mrs. Harbin, after consultation with Mr. Harbin, determines that it is in the best interest of the children for them to attend private school for the 2003-4 or any succeeding school year, the parties shall divide the cost of such private school education, with Mr. Harbin paying 75% and Mrs. Harbin paying 25%.

10.  That, so long as Mrs. Harbin resides with the children in the Montgomery area, Mr. Harbin shall be entitled to the following minimum visitation:

10

A.    On alternate weekends from the close of the school day on Friday until he returns them to school on Monday morning.

B.    During the weeks from the start of school sometime in August until it lets out in May or June, he shall have the children on Wednesdays from the close of school until 7:30 p.m.    During the weeks of the summer holidays, this Wednesday visit shall be overnight from 5:00 p.m. until 8:30 a.m. on Thursday morning.

C.    For thirty days during the summer, to be agreed upon by the parents.    If they cannot agree, he shall have fifteen days beginning at 6:00 p.m. on June 15th and a second fifteen days beginning at 6:00 p.m. on July 15th.

D.    For Thanksgiving in odd-numbered years from the close of school on the day school lets out until 6:00 p.m. on the day before classes resume.

E.    For the Christmas holidays in even-numbered years from the close of school on the day school lets out until 2:00 p.m. on Christmas Day.    In odd-numbered years, his Christmas visitation shall run from 2:00 p.m. on Christmas Day until 6:00 p.m. on New Years Day.

F.    For the Spring holidays in even-numbered years from the close of school on the day school lets out until 6:00 p.m. on the day before classes resume.

11

G.   When a Monday holiday (Lee/King Day, Presidents Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day) follows a normal visitation weekend, visitation shall continue until 6:00 p.m. on that holiday.

11.   That each parent shall have reasonable telephone access to the children while in the actual custody of the other parent and each parent shall keep the other informed of any overnight out-of-town trips involving the children.

12.   That each parent shall allow the other to keep the children in lieu of a baby-sitter when reasonably convenient to both parents.   Grandparents shall not be considered baby-sitters.

13.   That if Mrs. Harbin should move, all of these visitation arrangements will have to be reconsidered and adjusted.   Such a move would be considered a change in circumstances.

14.   That each parent will be allowed to spend some time with each child on that child's birthday and on that parent's birthday. If Mother's Day falls on a regular visitation weekend, the children shall be returned to Mrs. Harbin at 8:00 p.m. on that Saturday. If Father's Day falls on a day other than during Mr. Harbin's summer visitation or other than on a regular visitation weekend, he shall have the children from 9:00 a.m. until 6:00 p.m. on that day.

15.   That neither party shall allow any adult person, male or female, to whom the children are not related by blood or marriage,

12

to remain overnight, or into the late hours of the night, in his residence or in any other place where he is staying, while any of the children are present.

16. That each party shall be responsible for the payment of any debts is that party's name not specifically assigned to the other party.

17. That Mr. Harbin shall be responsible for the payment of any joint debts not specifically assigned to Mrs. Harbin and shall hold her harmless from any liability thereon.

18. That each party shall receive whatever motor vehicles and other personal property now is in such party's possession, not specifically awarded to the other party.

19. That Mr. Harbin shall be entitled to claim the older child as a dependent for federal and State income tax purposes. Mrs. Harbin shall execute whatever documentation is necessary for him to do so and, if she should fail to do so upon demand, the Deputy Register specifically is authorized to do so on her behalf.

20. That neither party shall hereafter harass or otherwise bother the other and each shall be entitled to life, liberty and the pursuit of happiness without interference from the other.

21. That Mrs. Harbin is awarded a judgment against Mr. Harbin in the amount of $35,000.00 in compensation for her attorney's fees and expenses.

13

22.   That the Court reserves the issue of post-minority support for the children's college education until that issue becomes mature.

23.   That Mr. Harbin is awarded the following personal property from the former marital home: His tools, the old John Deere lawn mower, any remaining clothing or personal effects, his golf clubs, his bicycle, the picture of the first home in Montgomery, his books, his video tapes and movies, the restored Coca-cola box, the armoire owned by him before the marriage, the Christmas ornaments which he made as a child, the Cannon 35mm camera, one-half of any Mose T paintings, and the Cutco cutlery. He also shall be entitled to copy any of the children's pictures, home movies or videos as he may desire.

24.   That Mr. Harbin shall maintain in effect at least $500,000.00 in insurance on his life, with the children as beneficiaries. This insurance shall not be borrowed against or otherwise encumbered. Proof of insurance shall be furnished to Mrs. Harbin within thirty days of Mr. Harbin's birthday each year.

25.   That each party is awarded any financial or retirement accounts in that party's name. Any joint accounts shall be divided equally by a Qualified Domestic Relations Order so as to avoid or minimize any current income tax liability.

26.   That Mrs. Harbin shall be sole custodian of any savings

14

accounts or other financial assets in the children's names.

27. That any remaining costs are assessed against Mr. Harbin.

28. That copies of this Order be furnished to Mr. Henig and to Mr. Minor.

**DONE** this 11th day of December, 2002.

W. MARK ANDERSON, III
Circuit Judge

Floyd Minor

John Henig



**8**

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
DOMESTIC RELATIONS DIVISION

In Re The Marriage of     )
                             )
HOPE DUNCAN HARBIN      )
                             )
   and              )    CASE NO. DR-2001-1310.01
                             )
MICHAEL G. HARBIN, JR.   )
                             )
Formerly Husband and Wife  )

12A03

## O R D E R

Mr. Henig continues to represent Mrs. Harbin. Mr. Byrne now represents Mr. Harbin. This round was brought on by Mrs. Harbin's decision to move to Atlanta. Mr. Patterson, who was just an old (but not elderly) divorced male friend and prospective employer in October 2002, now is her fiancé. ("If They Asked Me, I Could Write a Book.") Whether the move will relieve or compound her problems is yet to be seen.

The Court still believes that the children are better off in the physical custody of their mother. The move certainly causes problems in their relationship with their father, however. His mid-week times no longer are practicable. The children's extra-curricular activities in Atlanta will conflict more and more with the time available for their father and paternal family. Mr. Harbin already is the ex-husband. The Court does not want to see him become the ex-father.

EXHIBIT
# 8

Her August testimony was that she would make $30,000 per year plus a 20% commission in working for Mr. Patterson.  She was to begin in September but, as of the November hearing, she had not started work.

If she marries Mr. Patterson (and the Court has no reason to doubt that she will), Mr. Harbin's alimony obligation will cease. Now that the children are attending a public school, Mr. Harbin no longer is required to pay 75% of their private school tuition. That would help his cash flow considerably.

He should not have all of the cost of exercising visitation. The Georgia Welcome Center, in West Point, Ga., is a suitable point of exchange.

The Court has considered the effect and application of the newly enacted Alabama Parent Child Relationship Protection Act (Section 30-3-160 *et seq.*, Code).

It is, therefore, **ORDERED, ADJUDGED, AND DECREED** as follows:

1.  That no change of legal or physical custody is appropriate, but Mrs. Harbin shall contact Mr. Harbin before making any major decision affecting the children's health, welfare or education so as to allow him some input into that decision.

2.  That there is a need to alter the prescribed visitation which again is to be considered a minimum not a maximum.

3.  That Mr. Harbin shall be entitled to have the children with him on every three day weekend during the school year from the

2

close of school on Friday until 6:00 p.m., Eastern Time, on Monday. These are the Lee/King weekend in January, the Presidents Day weekend in February, Memorial Day weekend in May, Labor Day weekend in September, and Columbus Day weekend in October. On those weekends, unless the parties agree otherwise, Mr. Harbin shall pick up the children at school on Friday and return them to Mrs. Harbin's home on Monday.

4.    That Mr. Harbin shall be entitled to have the children with him on an additional weekend in January, February, May, September, and October. The parties shall agree as to which weekend this shall be but if they cannot agree, the visitation shall begin on the second Friday in January, February, and May, and the third Friday in September, and the fourth Friday in October. Unless the parties agree otherwise, Mr. Harbin shall pick up the children at the Georgia Welcome Center, in West Point, Ga., at 5:00 p.m., Eastern time, on Friday and return them to Mrs. Harbin at that point at 5:00 p.m., Eastern time, on Sunday.

5.    That the Court recognizes that the children's spring break may be either in March or in April. Mr. Harbin shall have the children for one weekend in the month of spring break and two weekends in the other month, with the exact weekends to be agreed upon by the parties. If they cannot agree, the weekend visitation in the spring break month shall be determined by Mr. Harbin. The weekends in the non-spring break month shall begin on the second

3

and fourth Fridays. Visitation shall be from 5:00 p.m., Eastern time, on Friday, until 5:00 p.m., Eastern time, on Sunday, with the point of exchange being at the Georgia Welcome Center.

6. That Mr. Harbin shall have visitation with the children for one weekend in November and December as agreed upon by the parties. If they cannot agree, visitation shall begin on the second Friday of each month at 5:00 p.m., Eastern time, and continue until 5:00 p.m., Eastern time on Sunday, with the point of exchange being at the Georgia Welcome Center.

7. That the provisions regarding summer visitation, outlined in paragraph 10C of the Order of December 11, 2002; the provisions regarding Thanksgiving visitation, outlined in paragraph 10D of said Order; and the provisions regarding Spring holidays, outlined in paragraph 10F of said Order; shall remain unchanged, except Mr. Harbin shall have the responsibility for picking up the children at school at the beginning of each such visitation period and shall return them to Mrs. Harbin's home, unless the parties agree otherwise.

8. That the Court is of the opinion that the children should not be required to travel on Christmas Day. Consequently, the time of exchange for Christmas visitation shall be at noon on December 26th, at the Georgia Welcome Center, rather than at 2:00 p.m. on Christmas Day, unless the parties agree otherwise.

9. That the provisions as to birthday, Mother's Day, and

4

Father's Day visitation (paragraph 14 of the aforesaid Order) are discretionary with the parties but they are encouraged to allow such visitation when practicable.

10. That Mr. Harbin shall be listed on any school forms as one of the people to be contacted in the event of an emergency.

11. That Mr. Harbin shall reimburse Mrs. Harbin for his share of any non-covered medical, dental, orthodontic, ophthalmic or counseling expenses not later than December 31, 2003.

12. That the parties are urged to remember that they are still parents and that they should not be rivals; that their children love both of them; that each of them loves their children; and that their children are entitled to the best possible relationship with each of them regardless of the differences that the parties may have.

13. That reference is hereby made to a separate Order entitled **"Supplemental Order in Accordance With the Alabama Parent-Child Relationship Protection Act"** which is required of this Court by the Alabama Parent-Child Relationship Protection Act and which is specifically incorporated herein as a part of this Order.

14. That, except as modified herein, the provisions of the original Decree and the Order of December 11, 2002, shall remain in full force and effect.

15. That each party shall be responsible for the payment of his own attorney's fees.

5

16. That all other relief is DENIED.

17. That copies of this Order be furnished to Mr. Henig and to Mr. Byrne.

**DONE** this 4th day of December, 2003.

W. MARK ANDERSON, III
Circuit Judge

David B. Byrne, III

John A. Henig, Jr.

## SUPPLEMENTAL ORDER IN ACCORDANCE WITH
## THE ALABAMA PARENT-CHILD RELATIONSHIP PROTECTION ACT

In accordance with the Alabama Parent-Child Relationship Protection Act, this Supplemental Order is attached to and made a part of this Court's Order of custody determination made in Case Number DR 01-1310.01, and entered on the 4th day of December, 2003, and the parties to said determination shall abide by the terms and conditions hereof.

Alabama law requires each party in this action who has either custody of or the right of visitation with a child to notify other parties who have custody of or the right of visitation with the child of any change in his or her address or telephone number, or both, and of any change or proposed change of principal residence and telephone number or numbers of a child. This is a continuing duty and remains in effect as to each child subject to the custody or visitation provisions of this order until such child reaches the age of majority or becomes emancipated and for so long as you are entitled to custody of or visitation with a child covered by this order. If there is to be a change of principal residence by you or by a child subject to the custody or visitation provisions of this order, you must provide the following information to each other person who has custody or visitation rights under this decree as follows:

(1) The intended new residence, including the specific street address, if known.
(2) The mailing address, if not the same as the street address.
(3) The telephone number or numbers at such residence, if known.
(4) If applicable, the name, address, and telephone number of the school to be attended by the child, if known.
(5) The date of the intended change of principal residence of a child.
(6) A statement of the specific reasons for the proposed change of principal residence of a child, if applicable.
(7) A proposal for a revised schedule of custody of or visitation with a child, if any.
(8) Unless you are a member of the Armed Forces of the United States of America and are being transferred or relocated pursuant to a non-voluntary order of the government, a warning to the non-relocating person that an objection to the relocation must be made within 30 days of receipt of the notice or the relocation will be permitted.

You must give notice by certified mail of the proposed change of principal residence on or before the 45th day before a proposed change of principal residence. If you do not know and cannot reasonably become aware of such information in sufficient time to provide a 45-day notice, you must give such notice by certified mail not later than the 10th day after the date that you obtain such information.

Your failure to notify other parties entitled to notice of your intent to change the principal residence of a child may be taken into account in a modification of the custody of or visitation with the child.

If you, as the non-relocating party, do not commence an action seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of notice of the intent to change the principal residence of the child, the change of principal residence is authorized.

W. Mark Anderson III

JUDGE/REFEREE