# 10



**BlueCross BlueShield of Alabama**

An Independent Licensee of the Blue Cross and Blue Shield Association.

450 Riverchase Parkway East
Birmingham, Alabama 35244
(205) 988-2444

**HARBIN'S-STERN BROS.**
PO BOX 4803
MONTGOMERY AL 36103

## PURCHASE ORDER REPRINT

PO Number: 0000014649

Date: 06/14/02

Show order number on all documents and packages

Required Date: 07-31-02
Buyer: Jolanda Green
Customer Number:

| Line | Qty | UOM | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | 1 | LOT1 | FURNITURE - PHASE II<br>DELIVERY: MARKETING SUPPORT - CC060<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116    Ship To 1 Qty: | $ 30,967.80 | $ 30,967.80 |
| | 1 | LOT1 | FURNITURE<br>DELIVERY: PROVIDER - CC179<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116    Ship To 1 Qty: | $ 10,757.75 | $ 10,757.75 |
| | 1 | LOT1 | FURNITURE<br>DELIVERY: MARKETING - CC061<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116    Ship To 1 Qty: | $ 8,510.45 | $ 8,510.45 |
| | 1 | LOT1 | FURNITURE<br>DELIVERY: PHARMACY - CC176<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116    Ship To 1 Qty: | $ 10,696.35 | $ 10,696.35 |
| | 1 | LOT1 | FURNITURE<br>DELIVERY: NURSES - CC208 | $ 69,998.70 | $ 69,998.70 |

FOR CONFIRMATION ONLY
DO NOT DUPLICATE

Unless Specifically Stated Otherwise, Prices in this Contract
Include All Freight and Shipping Costs

Page: 1

By _____
Authorized Signature

EXHIBIT #10



**BlueCross BlueShield of Alabama**

An Independent Licensee of the Blue Cross and Blue Shield Association.

450 Riverchase Parkway East
Birmingham, Alabama 35244
(205) 988-2444

Ship To: BLUE CROSS AND BLUE SHIELD OF

4465 PARK BOULEVARD
MONTGOMERY AL 36116

Ship To Qty: 1

| 1 | LOT1 | FURNITURE<br>DELIVERY: LARGE GROUP MARKETING - CC064<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br><br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116 | Ship To Qty: 1 | $ 37,154.70 | $ 37,154.70 |

Subtotal       $ 168,085.75
Tax
TOTAL          $168,085.75

**FOR CONFIRMATION ONLY
DO NOT DUPLICATE**

Unless Specifically Stated Otherwise, Prices in this Contract
Include All Freight and Shipping Costs

Page: 2

By _____
       Authorized Signature



**BlueCross BlueShield of Alabama**

An Independent Licensee of the Blue Cross and Blue Shield Association.

450 Riverchase Parkway East
Birmingham, Alabama 35244
(205) 988-2444

**HARBIN'S-STERN BROS.**
PO BOX 4803
MONTGOMERY AL 36103

## PURCHASE ORDER

PO Number: 0000014668

Date: 06/17/02

Show order number on all documents and packages

Required Date: 07-31-02
Buyer: Jolanda Green
Customer Number:

| Line | Qty | UOM | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | 1 | LOT1 | FURNITURE - PHASE IV<br>DELIVERY: CUSTOMER SERVICE MANAGERS - CC341<br>Ship To: BLUE CROSS AND BLUE SHIELD OF   Ship To Qty: 1<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116 | $ 7,908.10 | $ 7,908.10 |
| | 1 | LOT1 | FURNITURE<br>DELIVERY: CSD - WALK-IN OFFICES - CC341<br>Ship To: BLUE CROSS AND BLUE SHIELD OF   Ship To Qty: 1<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116 | $ 8,087.65 | $ 8,087.65 |
| | 1 | LOT1 | FURNTIURE<br>DELIVERY: CUSTOMER SERVICE ADD-ON - CC341<br>Ship To: BLUE CROSS AND BLUE SHIELD OF   Ship To Qty: 1<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116 | $ 2,782.95 | $ 2,782.95 |

| | |
|---|---|
| Subtotal | $ 18,778.70 |
| Tax | |
| TOTAL | $18,778.70 |

**FOR CONFIRMATION ONLY
DO NOT DUPLICATE**

Unless Specifically Stated Otherwise, Prices in this Contract
Include All Freight and Shipping Costs

Page: 1

By _____
Authorized Signature



**BlueCross BlueShield of Alabama**

An Independent Licensee of the Blue Cross and Blue Shield Association.

450 Riverchase Parkway East
Birmingham, Alabama 35244
(205) 988-2444

**HARBIN'S-STERN BROS.**
PO BOX 4803
MONTGOMERY AL 36103

## PURCHASE ORDER REPRINT

PO Number: 0000014665

Date: 06/17/02

Show order number on all documents and packages

Required Date: 07-31-02
Buyer: Jolanda Green
Customer Number:

| Line Qty | UOM | Description | Unit Price | Extended Price |
|---|---|---|---|---|
| 1 | LOT1 | FURNITURE<br>DELIVERY: LARGE GROUP MARKETING - CC064<br>PHASE III<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116   Ship To Qty: 1 | $ 8,842.95 | $ 8,842.95 |
| 1 | LOT1 | FURNITURE<br>DELIVERY: MARKETING - CC061<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116   Ship To Qty: 1 | $ 81,600.10 | $ 81,600.10 |
| 1 | LOT1 | FURNITURE<br>DELIVERY: LONG TERM CARE - CC629<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116   Ship To Qty: 1 | $ 20,171.55 | $ 20,171.55 |
| 1 | LOT1 | FURNITURE<br>DELIVERY: LAN TECH - CC798<br>Ship To: BLUE CROSS AND BLUE SHIELD OF<br>4465 PARK BOULEVARD<br>MONTGOMERY AL 36116   Ship To Qty: 1 | $ 4,187.75 | $ 4,187.75 |

**FOR CONFIRMATION ONLY DO NOT DUPLICATE**

Subtotal  $ 114,802.35
Tax
TOTAL  $114,802.35

Unless Specifically Stated Otherwise, Prices in this Contract Include All Freight and Shipping Costs

Page: 1

By _____
              Authorized Signature

# PROMISSORY NOTE

$ __190,000.00__     __Birmingham__   __AL__       September 7, 2001
                        (City)        (State)         (Date)

For value received, the undersigned (whether one or more, hereinafter called the "Obligors") promise(s) to pay to the order of __SouthTrust Bank__ (hereinafter called the "Bank" or, together with any other holder of this note, the "Holder"), at any office of the Bank in __Birmingham__ __AL__, or at such other place as the Holder may designate, according to the payment schedule below, the principal sum of __ONE HUNDRED NINETY THOUSAND AND NO/100__ Dollars, together with interest thereon at the rate provided below. Interest will accrue beginning on the date of this note unless another date is shown here: __09/07/01__.

**INTEREST RATE**     Except as otherwise provided in this note, Obligors agree that the principal sum of this note shall accrue interest as follows (mark applicable provision):

__X__ Variable Rate   Interest will accrue on the unpaid balance of the principal sum of this note at the rate per annum which is __0.50__ percentage points in excess of the Index Rate. Unless another rate is made applicable below, the "Index Rate" is the rate of interest designated by the Bank periodically as its Base Rate. The Base Rate is not necessarily the lowest rate charged by the Bank. The Base Rate on the date of this note is __6.50__ percent.

____ (applicable only if marked) The "Index Rate" is the weekly auction average yield of _____ week U.S. Treasury Bills at the most recent auction prior to the date the Index Rate is determined. The Index Rate on the date of this note is ____ percent.

The rate of interest payable under this note will change to reflect any change in the Index Rate:
__X__ on any day the Index Rate changes.          ____ on the ____ day of each month hereafter.
____ on the day each payment of interest is due as provided below
Obligors may prepay this note in full at any time without penalty.

Fixed Rate   Interest will accrue on the unpaid balance of the principal sum of this note at the rate of ____ percent per annum.

After maturity of the principal sum (whether at stated maturity or upon demand) interest will accrue on the unpaid balance of the principal sum (plus accrued but unpaid interest at maturity, to the extent permitted by law) at the rate which is 2 percentage points in excess of the rate provided for interest prior to maturity. Such interest will be payable on demand. The rate of interest under this note also may increase upon the occurrence of certain events described on the back of this page. Interest both before and after maturity will be calculated at the rate provided in this note on the basis of a __360__ day year and the actual number of days elapsed by multiplying the principal sum by the per annum rate set forth above, multiplying the product thereof by the actual number of days elapsed, and dividing the product so obtained by __360__, unless another method of calculation is required by law.

**PAYMENT SCHEDULE**   Obligors promise to pay the principal sum of this note and the interest thereon as follows (mark applicable provision):
__X__ Single Payment   The Obligors promise to pay the above-stated principal sum in full:
of Principal           __X__ on __SEPTEMBER 7, 2002__.          ____ on demand.
                       ____ on demand, but if no demand is made, then on ____

The Obligors promise to pay accrued interest on the principal sum:
____ at maturity of the principal sum.          __X__ monthly on the __7TH__ day of each month beginning __OCTOBER 7, 2001__ and at maturity.
____ quarterly beginning on ____ on the same day every three months thereafter, and at maturity.

All payments under this note shall be made in U.S. dollars and in immediately available funds at the place where payment is due.

**RENEWAL NOTE** (applicable only if completed) This note is given by Obligors to renew the obligations evidenced by that certain ____ note dated ____, ____ in the original principal amount of $____, and is not intended to be, nor shall it be construed to create, a novation or accord and satisfaction of such note or any other obligation of Obligors owing to Holder at any time, but shall be only a modification and extension of existing obligations of Obligors to Holder.

**LOAN FEE** (applicable only if completed): A loan fee in the amount of $ __100.00__ has been ____ included in the amount of this note and paid to the Bank from the loan proceeds. __X__ paid to the Bank by cash or check at closing. The loan fee is earned by the Bank when paid and is not subject to refund except to the extent required by law.

**LATE CHARGE** If payment of the principal sum or any scheduled payment of interest is late __10__ days or more, Obligors promise to pay a late charge equal to __one-half of one percent (1/2%)__ of the amount of the payment which is late, subject to a minimum late charge of $__5.50__ and a maximum late charge of $__250.00__.

SA53491 - SouthTrust Corporation Rev (6-96)                                   Page 1 of 5 ____ initials

**COLLATERAL.** This note is secur... y over ... urity agreement, pledge, assignment, stock powe... rtgage, deed of trust, security deed and/or other instrument covering personal or real pro... (all of which are hereinafter included in the term S... ate Agreements) which secures an obligation so defined as to include this note, including without limitation all such Separate Agreements which are of even date herewith and/or described in the space below. In addition, as security for the payment of any and all liabilities and obligations of the Obligors to the Holder (including this note and the indebtedness evidenced by this note and all extensions, renewals and modification thereof, and all writings delivered in substitution therefor) and all claims of every nature of the Holder against the Obligors, whether present or future, and whether joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, direct or indirect (all of the foregoing are hereinafter included in the term Obligations), the Obligors hereby assign and transfer to the Holder, and grant to the Holder a security interest in and security title to, the property described below: (Describe Separate Agreements and Collateral).

That certain Mortgage dated September 7, 2001 in the amount of $190,000.00 securing real property described therein

406 Eastern Lake Road  Santa Rosa Beach, Florida  32459-6536

_____ (applicable only if marked)  See property described on attached exhibit(s).

**DEMAND; ACCELERATION OF MATURITY**  If this note is payable on demand, or on demand but not later than a stated date, all of the Obligations shall be due and payable in full upon demand by the Holder, whether or not any event described below has occurred and whether or not the Holder reasonably deems itself to be insecure. If this note has no provision for payment on demand, the following terms apply: If default occurs in the payment of any principal or interest or any other sum under this note exactly when due or with respect to the performance of any promise or agreement contained in this note (time being of the essence of every provision of this note); or if any of the Obligors shall fail to pay any other debt or obligation to the Holder exactly when due; or if for any reason whatever the Collateral shall cease to be satisfactory to the Holder, or if any of the Obligors or any guarantor or indorser of this note shall die (if an individual) or dissolve or cease to do business (if a partnership, limited liability company, or corporation); or if any of the Obligors or any guarantor or indorser of this note becomes insolvent, or makes a general assignment for the benefit of creditors, or files or has filed against him, her, or it a petition under any chapter of the United States Bankruptcy Code, or files or has filed against him, her, or it an application in any court for the appointment of a receiver or trustee for any substantial part of his, her, or its property or assets, or if a judgment or arbitration award is entered against any Obligor or any guarantor or indorser of this note or a levy, writ of execution, attachment, garnishment, seizure, forfeiture, or other writ or judicial process is issued against any of the Obligors or any such guarantor or indorser or any of his, her, or its property or assets; or if any Obligor, indorser or guarantor of this note transfers all or any valuable part of his, her or its assets outside the ordinary course of business, or wastes, loses, or dissipates or permits waste, loss or dissipation of any valuable part of such person's assets; or if any Obligor, indorser or guarantor of this note is a partnership and any general partner of such partnership withdraws or is removed; or if any Obligor, endorser or guarantor of this note is a limited liability company ("LLC") and any member of such LLC withdraws or is removed, or if a managed LLC, if any manager resigns or is removed; or if any Obligor, indorser or guarantor of this note is a corporation and ownership or power to vote more than 50 percent of the voting stock of such corporation is transferred, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), during any 12 month period; or if any Obligor or any endorser or guarantor enters into any agreement or any letter of intent to do any of the foregoing, in this paragraph or calls a meeting of its stockholders or directors (if a corporation), or its partners (if a partnership), or its members or managers (if a limited liability company) for the purpose of authorizing acceleration as provided under any Separate Agreement; or if any of the Obligor; or any indorser or guarantor breaches any subordination agreement or intercreditor agreement made with or for the benefit of the Holder; or if at any time in the sole opinion of the Holder the financial responsibility of any Obligor or any indorser or guarantor of this note shall become impaired or the Holder otherwise deems itself to be insecure then, if any of the foregoing occur, all unpaid amounts of any or all of the Obligations (including this note) and all accrued but unpaid interest thereon shall, at the option of the Holder and without notice or demand, become immediately due and payable, notwithstanding any time or credit allowed under any of the Obligations or under any instrument evidencing the same.

SA53491(i) SouthTrust Corporation (5/96)      The provisions on page 4 and 5 are a part of this note.

Page 2 of 5 _____ Initials

The Obligors are jointly and severally liable for the payment of this note and have subscribed their names hereto without condition that anyone else should sign or become a party thereof and without any other condition whatever being made. The provisions printed on page 4 and 5 are a part of this note. The provisions of this note are binding the heirs, executors, administrators, successors and assigns of each and every Obligor and shall inure to the benefit of the Holder, its successors and assigns. This note is executed under the seal of each of the Obligors and of the indorsers, if any, with the intention that it be an instrument under seal.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

| OBLIGOR(S): | OBLIGOR(S): | OBLIGOR(S): |
|---|---|---|
| Signature of Corporation | Signature of Individual(s) | Signature of Partnership or Limited Liability Company |
| Name of Corporation | _____ [SEAL]  Michael G. Harbin, Jr. | Name of Partnership or Limited Liability Company |
| By: _____  Title: _____ | _____ [SEAL] | By: _____ [SEAL]  General Partner/Member/Manager |
| By: _____  Title: _____ | _____ [SEAL] | By: _____ [SEAL]  General Partner/Member/Manager |
| Attest: _____  Title: _____ | | (if General Partner or Manager is a corporation, then complete the following) |
| [CORPORATE SEAL] | | By: _____  Title: _____  By: _____  Title: _____  Attest: _____  Title: _____  [CORPORATE SEAL] |

OBLIGOR'S:
Address: 1236 Augusta Avenue
         Montgomery, AL 36111

Tax I.D. No.: 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

FOR BANK USE ONLY

No. 4807118-
Officer: Ron Creel, #AN2
Branch: Montgomery/Main, #105

205.309.3834

SA5549 © SouthTrust Corporation (5/95)    Page 3 of 5 _____ Initials

## Additional Terms and Conditions — Promissory Note
(Terms Continued from Page 1 and 2)

Each Obligor and each guarantor and endorser agrees (a) in the event such Obligor, guarantor or endorser is other than an individual, to furnish the Holder at least annually, within 120 days after the end of each calendar year or other fiscal year of such entity, a current financial statement, including a balance sheet and statements of income, cash flows and changes in capital for such year, setting forth in each case in comparative form the corresponding figures for the previous year, together with accompanying schedules and footnotes along with the accountant's letter accompanying the financial statements (if the financial statements were compiled or certified by a public accountant), such financial statements to be certified by the chief executive officer, chief financial officer, managing partner or comparable financial officer of such Obligor, guarantor or indorser to be true and complete to the best of his or her knowledge and belief and to have been prepared in accordance with generally accepted accounting principles or, if not so prepared, setting forth the manner in which such financial statement departs from generally accepted accounting principles; (b) in the event such Obligor, guarantor or indorser is an individual, to furnish the Holder at least annually, within 90 days after each anniversary date of this note, a personal financial statement in form satisfactory to the Holder, certified by such person to be true and complete to the best of his or her knowledge and belief, and to furnish the Holder, within 30 days after the Holder's request therefor, a copy of the federal income tax return most recently filed by such person; and (c) that this paragraph applies in addition to and not in lieu of any other agreement with the Holder which requires the furnishing of financial information.

If any Obligor, guarantor or indorser fails or refuses to furnish financial information to the Holder under the preceding paragraph or under the terms of any other agreement with the Holder which requires the furnishing of financial information, the Holder, without waiving its right to treat such failure or refusal as a default under this note, may give written notice to Obligors that the Holder has not received the required financial information and that the Holder intends to increase the interest rate under this note if the required information is not received within 30 days after the date of the notice. If the required information is not received by the Holder within 30 days after the date of the notice, the rate of interest payable under this note will increase by 1% per annum. The rate of interest payable under this note will increase by an additional 1% per annum each 30 days until the required financial information is received by the Holder, subject to a maximum increase of 4% per annum under the provisions of this paragraph. Any such increase(s) in the rate of interest will remain in effect until 30 days after the required information is received by the Holder.

As additional Collateral for the payment of all Obligations, the Obligors jointly and severally transfer, assign, pledge, and set over to the Holder, and grant the Holder a continuing lien upon and security interest in, any and all property of each Obligor that for any purpose, whether in trust for any Obligor or for custody, pledge, collection or otherwise, is now or hereafter in the actual or constructive possession of, or in transit to, the Holder in any capacity, its correspondents or agents, and also a continuing lien upon and right to set-off against deposits and credits of each Obligor with, and all claims of each Obligor against, the Holder now or at any time hereafter existing. The Holder is hereby authorized, at any time or times and without prior notice, to apply such property, deposits, credits, and claims, in whole or in part and in such order as the Holder may elect, to the payment of, or as a reserve against, one or more of the Obligations, whether other Collateral therefor is deemed adequate or not. As such property, deposits, credits and claims of the Obligors are included in the term Collateral, and the Holder shall have (unless prohibited by law) the same rights with respect to such Collateral as it has with respect to other Collateral.

The Obligors agree to comply with all present and future laws having application to the Obligors, to the Obligors' business or property, or to any of the Collateral, including, without limitation, all environmental protection or clean-up laws and all laws providing protection to persons with disabilities. The Obligors agree to notify the Holder in writing within 3 business days after the Obligors receive any notice of alleged violation of any such law or any claim or demand for damages or other relief on account of the alleged violation of any such law. As used in this paragraph, the term "laws" includes any and all statutes, regulations, ordinances, judgments, orders and other similar directives of any governmental unit, agency or authority, or court or other tribunal having jurisdiction over the Obligors, their business or property, or the Collateral. The Obligors agree to indemnify the Holder against and hold the Holder harmless from all damages, liabilities, costs and expenses (including reasonable attorneys' fees and other costs of litigation or other proceedings) which the Holder may suffer or incur as a result of the breach of any of the foregoing covenants by the Obligors, or any of them. This agreement of indemnity shall survive payment or other discharge of this note.

Without the necessity for any further notice to or consent of any Obligor, the Holder may exercise any rights of any of the Obligors with respect to any Collateral, including without limitation thereto the following rights: (1) to record or register in, or otherwise transfer into, the name of the Holder or its nominee all or any part of the Collateral, without disclosing that the Holder's interest is that of a secured party; (2) to pledge or otherwise transfer any or all of the Obligations and/or Collateral, whereupon any pledgee or transferee shall have all the rights of the Holder hereunder, and the Holder shall thereafter be fully discharged and relieved from all responsibility and liability for the Collateral so transferred but shall retain all rights and powers thereunder as to all Collateral not so transferred; (3) to take possession of any Collateral and to receive any proceeds of and dividends and income on any Collateral, including money, and to hold the same as Collateral without liability for interest or apply the same to any of the Obligations, the manner, order and extent of such application to be in the sole discretion of the Holder; (4) to exercise without liability for interest any and all rights of voting, conversion, exchange, subscription or other rights or options pertaining to any Collateral; and (5) to liquidate, demand, sue for, collect, compromise, receive and give receipt for the cash or surrender value of any Collateral. If for any reason whatsoever the Collateral shall cease to be satisfactory to the Holder, the Obligors shall upon demand deposit with the Holder additional Collateral satisfactory to the Holder. Surrender of this note, upon payment or otherwise, shall not affect the right of the Holder to retain the Collateral as security for other Obligations. Upon default, the Obligors agree to assemble the Collateral and make it available to Holder at such place or places as the Holder shall designate.

The Holder shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral which is in its possession if it takes such reasonable actions for that purpose as the pledgor of such Collateral shall request in writing, but the Holder shall have the sole power to determine whether such actions are reasonable. Any omission to do any act not requested by the pledgor shall not be deemed a failure to exercise reasonable care. The Obligors shall be responsible for the preservation of the Collateral and shall take all steps to preserve rights against prior parties. The Holder shall not be liable for, and no Obligor, indorser, or guarantor shall be discharged to any extent on account of, any failure to realize upon, or to exercise any right or power with respect to, any of the Obligations or Collateral, or for any delay in so doing.

The Holder, without making any demand whatsoever, shall have the right to sell all or any part of the Collateral, although the Obligations may be contingent or unmatured, whenever the Holder considers such sale necessary for its protection. Sale of the Collateral may be made, at any time and from time to time, at any public or private sale, at the option of the Holder, without advertisement or notice to any Obligor, except such notice as is required by law and cannot be waived. The Holder may purchase the Collateral at any such sale (unless prohibited by law) free from any equity of redemption and from all other claims. After deducting all expenses including legal expenses and attorney's fees as provided below, for maintaining or selling the Collateral and collecting the proceeds of sale, the Holder shall have the right to apply the remainder of said proceeds in payment of, or as a reserve against, any of the Obligations, the manner, order and extent of such application to be in the sole discretion of the Holder. To the extent notice of any sale or other disposition of the Collateral is required by law to be given to any Obligor and cannot be waived, the requirement of reasonable notice shall be met by sending such notice, as provided below, at least ten (10) calendar days before the time of sale or disposition. The Obligor shall remain liable to the Holder for the payment of any deficiency with interest at the rate provided in this note. However, the Holder shall not be obligated to resort to any Collateral but, at its election, may proceed to enforce any of the Obligations in default against any or all of the Obligors.

With respect to any and all Obligations, to the extent permitted by applicable law, the Obligors and any indorsers of this note severally waive the following: (1) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the constitution and laws of the United States or of any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold any Obligor liable on any Obligation; (3) any further receipt or acknowledgment of the Collateral now or hereafter deposited or any statement of indebtedness; (4) all statutory provisions and requirements for the benefit of any Obligor, now or hereafter in force (to the extent that any may be waived); (5) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Holder and any Obligor shall be adverse parties; and (6) notice of any intended public or private sale or sales or other intended disposition by the Holder of the Collateral or any part thereof. The Obligors severally agree that any Obligations of any Obligor may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, discharged or released, and any Collateral, lien and/or right of set-off securing any Obligation may from time to time, in whole or in part, be exchanged, sold, or released, all without notice to or further reservations of rights against any Obligor and all without in any way affecting or releasing the liability of any Obligor. The Obligors jointly and severally agree to pay on demand all filing fees and taxes in connection with this Note or the Collateral and all costs of collecting or securing or attempting to collect or secure any Obligations, including attorneys' fees in the amount which is 15% of the unpaid balance of this note at the time of default if an attorney who is not a salaried employee of the Holder is consulted with reference to suit, bankruptcy proceedings, or otherwise following any default under this note by Obligors.

Holder has the author... amend... any d... ela, omission or otherwise be deemed to h... aived any of its rights or remedies. No officer or agent of the Holder has the authority to amend or waive any of the terms of this note orally, and amendment or waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Holder under the terms of this note, under the Separate Agreements, and under statutes or rules of law are cumulative and may be exercised successively or concurrently. The Obligors jointly and severally agree that the Holder shall be entitled to all rights of a holder in due course of a negotiable instrument. This note shall be governed by and construed in accordance with the substantive laws of the United States and, to the extent not inconsistent therewith, the substantive laws of Alabama, without regard to the rules of such state governing conflicts of law. Obligors consent to the nonexclusive jurisdiction of any state or federal court located in the State of Alabama, and, to the extent permitted by applicable law, waive any objection based on venue or forum non conveniens with respect to any action instituted in any such court. Obligors agree that process in any such action will be sufficient if served on any Obligor by certified mail, return receipt requested, or in any other manner provided by law. Notwithstanding the foregoing, Holder shall have the right to bring any action or proceeding against Obligors, or against the property of any Obligor, in the courts of any other jurisdiction Holder deems necessary or appropriate in order to enforce the obligations of Obligors under this note and any Separate Agreements. Any provision of this note which may be unenforceable or invalid under applicable law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof. Any notice required to be given to any person shall be deemed sufficient if delivered to such person or if mailed, postage prepaid, to such person's address as it appears on this note or, if none appears, to any address of such person in the Holder's files. The Holder shall have the right to correct patent errors in this note. A photocopy of this note may be filed as a financing statement in any public office.

The Obligors understand that the Bank may enter into participation agreements with participating banks whereby the Bank will sell undivided interests in this note to such other banks. The Obligors consent that the Bank may furnish information regarding the Obligors, including financial information, to such banks from time to time and also to prospective participating banks in order that such banks may make an informed decision whether to purchase a participation in this note. The Obligors hereby grant to each such participating bank, to the extent of its participation in this note, the right to set off deposit accounts maintained by the Obligors, or any of them, with such bank, against unpaid sums owed under this note. Upon written request from the Holder, the Obligors agree to make each payment under this note directly to each such participating bank in proportion to the participant's interest in this note as set forth in such request from the Holder.

If, at any time, the rate or amount of interest, late charge, attorney's fee or any other charge payable under this note shall exceed the maximum rate or amount permitted by applicable law, then, for such time as such rate or amount would be excessive, its application shall be suspended and there shall be charged instead the maximum rate or amount of interest permitted under such law, and any excess interest or other charge paid by the Obligors or collected by the Holder shall be refunded to the Obligors or credited against the principal sum of this note, at the election of the Holder or as required by applicable law. Obligors agree that the late charge provided in this note is a reasonable estimate of probable additional unanticipated internal costs to the Holder of reporting, accounting for, and collecting the late payment, and that such costs are difficult or impractical to estimate accurately.

Obligors represent and agree that the proceeds of the loan evidenced by this note shall be used solely for business purposes and shall not be used for any personal, family, household, consumer or other purpose. The provisions of this paragraph shall control, when applicable, notwithstanding any provision of this note to the contrary: If the Obligors are one or more natural persons and the loan is used for personal, family, or household use other than for the purchase of real property, the following provisions are applicable: (a) the waivers of exemption of property from levy or sale under execution or other process for the collection of debts, as hereinabove provided, applies only with respect to the Collateral, if any, for this note; (b) to the extent that any Separate Agreement covers property which is "household goods", as that term is defined in 12 C.F.R. Section 227.12(d), and to the extent the proceeds of the loan evidenced by this note were not used to purchase such property, such "household goods" do not constitute any part of Collateral for the Obligations, and (c) no consumer protection provision of applicable law and no limitation on the remedy of garnishment provided under federal or state law is waived hereby. If the proceeds of the loan evidenced by this note are used primarily for personal, family, household or agricultural purposes, and if Alabama law governs this note, the agreement hereinabove made to pay an attorney's fee for collection following default applies only if the original principal balance of the loan exceeds $300, and the attorney's fee shall be a reasonable fee not exceeding 15% of the unpaid balance of this note after default and referral of this note to an attorney, not a salaried employee of the Holder, for collection. If the proceeds of the loan evidenced by this note are used primarily for personal, family, or household use, and if any of the Separate Agreements grants the Holder a lien on or title to the principal dwelling of any of the Obligors, the Holder waives the benefit of such Obligor's principal dwelling as security for the Obligations, unless such Separate Agreement is specifically described on page 1 and 2 of this note.

**HEADINGS** The headings set forth in this note are for convenience of reference only, and shall not limit, alter, define, or otherwise be used in construing any provision of this note.

**EACH INDORSER OF THIS NOTE AGREES TO BE BOUND BY THE PROVISIONS PRINTED OR OTHERWISE APPEARING ABOVE AND ON ALL PAGES OF THIS NOTE, INCLUDING THE PROVISION FOR PAYMENT OF ATTORNEYS FEES FOR COLLECTION.**

Page: 1 Document Name: untitled

```
CLHI                        SOUTHTRUST BANK                          BANK 001
CUST#   4807118     SOUTHTRUST COMMERCIAL LOAN INQUIRY SYSTEM
NOTE#   91204                   NOTE HISTORY                     START 09/25/01
        HARBIN M G JR                                      TIED TO LINE 0000000 00000
DEL CYCLE 1 001  DEL CYCLE 2 001  DEL CYCLE 3 000   ACCRUAL 3   NON-ACCRUAL N
DEL 30 DAYS 000  DEL 60 DAYS 000  DEL 90 DAYS 000
POST DT  EFF DT  TC  INT RATE       TXN AMT 1        TXN AMT 2       TXN AMT 3
                     /CODE          TXN AMT 4        TXN AMT 5       PRIN BALANCE
                                    REB AMT 1        REB AMT 2       REB AMT 3

09/25/01 09/07/01 11 00.0000000    19,961.19        19,961.19            0.00
                     00                 0.00             0.00        19,961.19
                                        0.00             0.00             0.00
09/25/01 09/07/01 62 00.0000000        16.50             0.00             0.00
                     00                 0.00             0.00        19,961.19
                                        0.00             0.00             0.00
09/25/01 09/07/01 62 00.0000000       100.00             0.00             0.00
                     00                 0.00             0.00        19,961.19
                                        0.00             0.00             0.00
09/26/01 09/17/01 03 06.5000000         0.00             0.00             0.00
                     00                 0.00             0.00        19,961.19
                                        0.00             0.00             0.00

MSG: MORE TRANSACTIONS AVAILABLE--PRESS PF8 TO VIEW
CLEAR-EXIT SYSTEM   PF3-RETURN TO MENU   PF8-PAGE FORWARD
```

Date: 6/25/2002 Time: 3:01:32 PM

JUN-21-2002 FRI :08 PM S. .HTRUST BANK          F  NO. 334 .. 3.          P. 08

Page: 1  Document Name: untitled

```
CLHI                           SOUTHTRUST BANK
CUST#  4807118        SOUTHTRUST COMMERCIAL LOAN INQUIRY SYSTEM           BANK 001
NOTE#  91204                      NOTE HISTORY                        START 10/03/01
       HARBIN M G JR                                           TIED TO LINE 0000000 00000
DEL CYCLE 1 001  DEL CYCLE 2 001  DEL CYCLE 3 000            ACCRUAL 3  NON-ACCRUAL N
DEL 30 DAYS 000  DEL 60 DAYS 000  DEL 90 DAYS 000
POST DT  EFF DT  TC   INT RATE        TXN AMT 1        TXN AMT 2           TXN AMT 3
                      /CODE           TXN AMT 4        TXN AMT 5         PRIN BALANCE
                                      REB AMT 1        REB AMT 2           REB AMT 3
10/03/01 10/03/01 01  06.0000000          0.00             0.00                0.00
                            00            0.00             0.00                0.00
                                          0.00             0.00           19,961.19
10/17/01 10/17/01 08  00.0000000          0.00             0.00                0.00
                            00            0.58             0.00                0.00
                                          0.00             0.00           19,961.19
10/22/01 10/19/01 84  00.0000000          0.00             0.00                0.00
                            00            0.00           116.44                0.00
                                          0.00             0.00           19,961.19
11/07/01 11/07/01 01  05.5000000          0.00             0.00                0.00
                            00            0.00             0.00                0.00
                                          0.00             0.00           19,961.19
                                          0.00             0.00                0.00

MSG: NO MORE TRANSACTIONS FOR NOTE--PLEASE ENTER NEXT KEY
CLEAR-EXIT SYSTEM  PF3-RETURN TO MENU  PF7-PAGE BACKWARD
```





Date: 6/25/2002 Time: 3:00:19 PM

Page: 1 Document Name: untitled

```
LOAN REQ: 0464                    OFFICER INQUIRY                    PAGE 0001 OF 0002
BANK: 01    AP: 1    OBGOR: 0014807118    OBGAT: 0000091204          MICHAEL G HARBI
DATE:           CHG CODE:         INVOICE/ITEM:                      PAGE:
BAL TYPE: 000         PRINCIPAL
TRAN    DESCRIPTION    EFFECT                                        RUNNING
CODE                   DATE       RATE--OR--TRAN AMT                 BALANCE
        BALANCE FORWARD 11-09-01                                     0.00
1350    NEW ACCRUAL    11-09-01    5.50000000                        0.00
3402    DISBURSEMENT   11-09-01             19,961.19                19,961.19
6122    OBLIGAT HDR ADJ 11-09-01                 83.12
1350    NEW ACCRUAL    11-09-01    5.50000000
1350    NEW ACCRUAL    11-09-01    5.50000000
3902    ADVANCE PRINC  11-09-01             20,000.00                39,961.19
4022    CURR INT PAYMNT 11-23-01                96.48-
4042    CURR PRIN PYMNT 11-23-01                  .58-                39,960.61
1350    NEW ACCRUAL    12-12-01    5.25000000                        39,960.61
1350    NEW ACCRUAL    12-12-01    5.25000000                        39,960.61
4022    CURR INT PAYMNT 12-21-01                91.48-
4042    CURR PRIN PYMNT 12-21-01                 4.42-                39,956.19
4072    LATE CHRG PYMNT 12-21-01                  .58-
4022    CURR INT PAYMNT 01-23-02                90.92-
3902    ADVANCE PRINC  01-25-02             10,000.00                49,956.19
3902    ADVANCE PRINC  03-01-02             29,967.52                79,923.71
```

Date: 6/25/2002 Time: 2:58:11 PM

JUN-21-2002 FRI 08 PM S TRUST BANK    FAX NO. 334   38        P. 10

Page: 1 Document Name: untitled

```
LOAN REQ: 0464                       OFFICER INQUIRY
BANK: 01    AP: 1   OBGOR: 0014807118    OBGAT: 0000091204    PAGE 0002 OF 0002
DATE:     /         CHG CODE:             INVOICE/ITEM:                MICHAEL G HARBI
BAL TYPE: 000       PRINCIPAL                                          PAGE:
TRAN    DESCRIPTION      EFFECT
CODE                      DATE                                         RUNNING
                                         RATE--OR--TRAN AMT            BALANCE
4022 CURR INT PAYMNT    03-07-02
4022 CURR INT PAYMNT    03-27-02               231.50-
3902 ADVANCE PRINC      05-20-02               736.29-
4022 CURR INT PAYMNT    06-03-02             8,576.93
                                               733.50-                 88,500.64
```

Date: 6/25/2002 Time: 2:58:43 PM