## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEELCASE, INC. a Michigan
corporation,

    Plaintiff,

v

HARBIN'S INC., an Alabama
corporation, MICHAEL G. HARBIN
and HOPE D. HARBIN PATTERSON (now
HOPE DUNCAN PATTERSON),

    Defendants.

Case No.: 1:04cv0026
Hon. Robert Holmes Bell
Chief, U. S. District Judge

---

MILLER, JOHNSON, SNELL &
CUMMISKEY, P. L. C.
Jon G. March (P17065)
Attorneys for Plaintiff
250 Monroe Avenue, N. W. - Ste 800
P. O. Box 306
Grand Rapids, MI 49501-0306
(616) 831-1700

SILVERMAN, SMITH, BINGEN & RICE, P.C.
Robert W. Smith (P31192)
Attorneys for Defendant Michael G. Harbin
151 S. Rose Street
707 Comerica Building
Kalamazoo, MI 49007
(269) 381-2090

HOPE D. HARBIN - PATTERSON (now
HOPE DUNCAN PATTERSON)
Defendant in Pro Per
4514 Chamblee Dunwoody Rd., 238
Atlanta, GA 30338-6202

---

### AFFIDAVIT OF MICHAEL G. HARBIN, JR. IN
### SUPPORT OF MOTION FOR SUMMARY JUDGMENT,
### OR ALTERNATIVELY, TRANSFER OF VENUE

Defendant Michael G. Harbin, Jr. deposes and says as follows:

1.     I have been the President of Harbin's, Inc., an Alabama corporation, since March 1990, and I have been its Chief Executive Officer from March 1990 until April 2004. I am a Defendant in the above captioned matter.


DEFENDANT'S EXHIBIT 9

2. If called upon to testify I can testify truthfully and accurately as to all those matters contained herein.

3. In March of 1990, I acquired controlling interest in Harbin's, Inc., an Alabama corporation engaged in business as Harbin's Office Supply & Furniture.

4. Harbin's, Inc. had been a Steelcase dealer since long before I acquired controlling interest in Harbin's, Inc.

5. When I obtained controlling interest in Harbin's, Inc., employees of Plaintiff Steelcase, Inc. ("Steelcase") asked me to sign a continuing personal guaranty of the Harbin's, Inc. account. I refused to do so.

6. In spite of my refusal to sign a continuing personal guaranty in 1990, Steelcase continued doing business with Harbin's, Inc. after I acquired controlling interest in it.

7. In 1993, Harbin's, Inc. placed a large order with Steelcase for materials ordered by ALFA Insurance Company. At that time, Steelcase renewed its request for me to sign a continuing personal guaranty. I again refused. Steelcase then advised me that it would not ship the large order without a personal guaranty. I advised Steelcase that ALFA was looking at other manufacturers anyway and that I would place ALFA's business elsewhere. Shortly thereafter, the Steelcase credit manager called me back to ask if I would sign a personal guaranty **limited to the ALFA project only.** I agreed and the Guaranty attached to Steelcase's Complaint in this matter as Exhibit B, as prepared by Steelcase, was signed after several changes were made to it. My ex-wife signed it as well.

8. When I subsequently placed a second large order on behalf of Harbin's, Inc. for ALFA Insurance Company, Steelcase asked me to sign another personal guaranty limited to the second large order. I agreed. Steelcase prepared the Guaranty which is attached

Steelcase, Inc. v Harbin, et. al.
Affidavit of Michael G. Harbin in Support of Motion for
Summary Judgment, or Alternatively, Change of Venue       Page 2                    Case No.: 1:04cv0026

to its Complaint and marked as Exhibit C. I signed that as well as my ex-wife. That guaranty was **limited to the second ALFA project only.**

9. Upon completion of both ALFA projects, Harbin's Inc. paid in full all of the invoices corresponding to the purchase orders identified in the two limited guaranty agreements and I confirmed, in a separate letter to Steelcase, that the two limited guaranty agreements were terminated. I did that only to clarify that the purchase orders referenced in these two guaranties had been paid in full.

10. In June of 1999, Harbin's, Inc., in conjunction with Stern Brothers, Inc. formed a new entity known as Harbin's-Stern Brothers, LLC. Stern Brothers was in the used office furniture sales and furniture repair business. Harbin's, Inc. owned 51% of the membership interest of the new LLC. Stern Brothers, Inc. owned the other 49%. From approximately July of 1999 through May 31, 2002, Harbin's, Inc. only conducted business as a member of Harbin's-Stern Brothers, LLC. May 31, 2002 is the last day that Harbin's-Stern Brothers, LLC did business.

11. On June 1, 2002, Harbin's, Inc. began to conduct business on its own just as it had before the formation of Harbin's-Stern Brothers, LLC.

12. Harbin's, Inc. did not keep a separate bank account, after the formation of Harbin's-Stern Brothers, LLC. Accordingly, income attributable to Harbin's, Inc. received after Harbin's-Stern Brothers, LLC began to conduct business, was deposited into my personal checking account as the sole shareholder of Harbin's, Inc. Income was accounted for as income of Harbin's, Inc. in the federal and state tax returns of Harbin's, Inc.

Steelcase, Inc. v Harbin, et. al.
Affidavit of Michael G. Harbin in Support of Motion for
Summary Judgment, or Alternatively, Change of Venue        Page 3                    Case No.: 1:04cv0026

13. With regard to the allegations in the Complaint that I intermingled personal assets with corporate assets, <u>in all such instances it was done for the benefit of the corporation</u>, not me personally. Those instances were as follows:

    a. Harbin's, Inc. issued a non-sufficient funds check to one of its vendors, SP Richards. That vendor then insisted on a certified check payment upon delivery. The Harbin's, Inc. corporate account charged a $10 processing fee for each certified check. Harbin's, Inc. had a delivery from SP Richards almost every day. My personal bank account had free certified checking privileges. In order to save the $10 processing fee I would have Harbin's, Inc. write me a check for the amount of the delivery from SP Richards, I would go to my personal bank and deposit that check into my personal account. I would then have a certified check issued on my personal account for the same amount made payable to SP Richards. I would then exchange that certified check for the goods delivered. I did this for a period of about two weeks in September of 2003. Finally I told SP Richards if it was going to continue to insist upon certified funds, Harbin's, Inc. would take its business elsewhere. SP Richards then relented.

    b. In 2001, I used my personal account to temporarily place Harbin's-Stern Brothers, LLC money that was earmarked for a large payment to Steelcase. I was concerned that if it was left in the Harbin's, Inc. general account, it might be spent for something else and I wanted it used to pay Steelcase in full for a large order. Steelcase was paid in full for that order out of my personal checking account from those same earmarked funds.

    c. There were a number of instances when Harbin's, Inc. did not have sufficient funds in its payroll account to pay all the employees and myself. On those occasions, I told the payroll company that we used, Paymaxx, not to issue me a paycheck. On those occasions, I was paid later when the corporation had money to pay me.

    d. During the last two years that Harbin's. Inc. was in operation, I used my own personal funds to make loans to Harbin's, Inc. When Harbin's. Inc. had the money available to pay those loans back, some of it was paid back. I do not believe I was ever paid in full for all of the personal loans I made to Harbin's. Inc.

14. My total income from Harbin's. Inc. in 2004 (January 1st to April 40th) was $4,286.35 (Exhibit A to this Affidavit).

Steelcase, Inc. v Harbin, et. al.
Affidavit of Michael G. Harbin In Support of Motion for
Summary Judgment, or Alternatively, Change of Venue     Page 4     Case No.: 1:04cv0026

15. My total income from Harbin's. Inc. in 2003 was $55,748.00 (Exhibit B to this Affidavit).

16. As a result of the allegations in the Second Amended Complaint now alleging that the corporate veil of Harbin's. Inc. should be pierced and that I should be personally liable, I will need to call some, or all, of the following witnesses to testify in defense of the allegations in the Second Amended Complaint regarding the piercing of the corporate veil claim:

    a. Janie Gililand: She is the attorney that I consulted during the last approximately six months that Harbin's. Inc. was going out of business. She has knowledge of the corporation's business and financial operations and the maintenance of the corporate form by Harbin's, Inc. She is located in Montgomery, Alabama.

    b. Tommy Sisson: He is the CPA that Harbin's. Inc. used to prepare corporate tax returns. He also prepared my personal tax returns. He has knowledge of financial and accounting aspects of Harbin's. Inc. He is located in Birmingham, Alabama.

    c. Charlotte Thorpe: She was the bookkeeper for Harbin's. Inc. She has intimate knowledge of the accounting and financial operations of Harbin's. Inc. She is located in Montgomery, Alabama.

    d. Gloria Blackwell: She was the previous bookkeeper for Harbin's. Inc. and she also has knowledge of the accounting and financial records and operations of Harbin's. Inc. She is located in Montgomery, Alabama.

    e. Courtney Harbin: She worked in accounts receivable, acted as my assistant, and also as the assistant bookkeeper. She has knowledge of the accounting and financial operations of Harbin's. Inc. She is located in Santa Rosa Beach, Florida.

    f. Keeper of the records of Amsouth Bank: I did all of my personal checking at Amsouth Bank in Montgomery, Alabama. My personal banking records would be important evidence in defending the Steelcase claims and I would think those records, and the keeper of the records, are located in Montgomery, Alabama.

    g. Ray Petty: He works for Southtrust Bank in Montgomery, Alabama. Southtrust Bank had the mortgage on the property where Harbin's. Inc. did

Steelcase, Inc. v Harbin, et. al.
Affidavit of Michael G. Harbin in Support of Motion for
Summary Judgment, or Alternatively, Change of Venue     Page 5     Case No.: 1:04cv0026

business. I negotiated a deed in lieu of foreclosure with Mr. Petty and Southtrust Bank took over that property the day Harbin's closed it doors. He can testify regarding the corporate records of Harbin's. Inc. which were left behind. He also has knowledge of the accounting and financial operations of Harbin's. Inc.

h.  Keeper of the records of Southtrust Bank: I believe the records of Southtrust Bank as they pertain to the deed in lieu of foreclosure are located in Montgomery, Alabama. Moreover, Harbin's. Inc. used Southtrust Bank as its banking institution prior to doing business with Colonial Bank. Some of the records of Southtrust Bank may be pertinent with respect to my defense of the piercing claim.

i.  John Cooper: He is an employee of Colonial Bank of Montgomery Alabama. Colonial Bank had a secured position in all of the assets of Harbin's. Inc. The going out of business sale by Harbin's. Inc. was conducted under the auspices of John Cooper and Colonial Bank. John Cooper is located in Montgomery, Alabama. He has knowledge of the accounting and financial operations of Harbin's. Inc. and the going out of business sale. He also has knowledge of my personal finances and the absence of any claims against me for misusing corporate funds inasmuch as I signed a personal guaranty with Colonial Bank.

j.  Jay Wolfe: He is a minister at First Baptist of Montgomery, Alabama. I negotiated with him regarding the sale of the building in which Harbin's. Inc. was located in an attempt to sell that building directly to the First Baptist Church. We did not negotiate a direct sale, however, the First Baptist Church bought the building from Southtrust Bank. As the purchaser of the building, he would have knowledge of the whereabouts of the corporate records of Harbin's. Inc. that were left behind.

k.  John Frisk: He is an employee of Partners in Business, Inc. I negotiated an agreement with him whereby Partners in Business, Inc. purchased the book of business of Harbin's. Inc. He is located in Orlando, Florida. He would have knowledge regarding the disposition of some of the assets of Harbin's. Inc.

l.  Mark Campbell: He is an employee of ALFA Insurance Company located in Montgomery, Alabama. ALFA was the largest customer of Harbin's. Inc. He can testify regarding various transactions between Harbin's. Inc. and ALFA Insurance Company which may become issues in the piercing claim.

m.  Employees of Paymaxx: Paymaxx was the payroll company used by Harbin's. Inc. It is located in Tennessee, but has a connection with Tommy Sisson, Harbin's. Inc.'s CPA. It may be necessary to call on employees of Paymaxx to testify regarding several of the transactions mentioned above.

Steelcase, Inc. v Harbin, et. al.
Affidavit of Michael G. Harbin In Support of Motion for
Summary Judgment, or Alternatively, Change of Venue          Page 6                         Case No.: 1:04cv0026

n. Sarah Spear: She is the Montgomery County Revenue Commissioner. She can testify regarding the method by which Harbin's. Inc. paid its taxes after it went out of business.

o. Michael Behrman: He is located in Montgomery, Alabama. He is my former business partner. He will have information regarding the formation and disposition of Harbin's-Stern Brother, LLC and its assets.

p. Tom Methvin: He is an attorney in Montgomery, Alabama. His law firm was a large customer of Harbin's. Inc. He is also a personal friend and former business partner. He may be used as a witness regarding proper utilization of Harbin's. Inc. as a corporate form.

q. Nick Parnell: He was the attorney who represented Colonial Bank during the going out of business sale, and the litigation against Harbin's. Inc. and me personally by Colonial Bank that followed. He is located in Montgomery, Alabama. He has knowledge of the accounting and financial operations of Harbin's. Inc., my personal financial affairs, and the disposition of assets of Harbin's. Inc.

17. I can think of a number of other people associated with Harbin's. Inc. who may be considered as witnesses with respect to the piercing claim, or have information that may be pertinent to defending it. I can think of no one in Michigan who would have such information.

18. Further your affiant sayeth not.

Dated: April 27, 2005

/s/ Michael G. Harbin, Jr.

STATE OF FLORIDA )
)
WALTON COUNTY )

SUBSCRIBED and SWORN to before me, a Notary Public, on this 27 day of April, 2005, by Michael G. Harbin.

/s/ (signature)
Cherie L. McDaniel
(print/type name)
Acting in Walton County, Florida
My Commission Expires: 11/28/2006

[Notary Seal: CHERIE L. MCDANIEL, MY COMMISSION EXPIRES November 28, 2006, #DD 168020, Bonded thru Notary Public Underwriters, NOTARY PUBLIC, STATE OF FLORIDA]

Steelcase, Inc. v Harbin, et. al.
Affidavit of Michael G. Harbin in Support of Motion for
Summary Judgment, or Alternatively, Change of Venue    Page 7    Case No.: 1:04cv0026