# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

STEELCASE, INC. a Michigan corporation,

    Plaintiff,

v.

HARBIN'S INC., an Alabama corporation, MICHAEL G. HARBIN, and HOPE D. HARBIN PATTERSON (now HOPE DUNCAN PATTERSON),

    Defendants.

Case No.: 1:04cv0026
Hon. Robert Holmes Bell
Chief, U. S. District Judge

_____/

| | |
|---|---|
| MILLER, JOHNSON, SNELL & CUMMISKEY, P. L. C.<br>Attorneys for Plaintiff<br>Jon G. March (P17065)<br>250 Monroe Avenue, N. W. - Ste 800<br>P. O. Box 306<br>Grand Rapids, MI 49501-0306<br>(616) 831-1700<br><br>HOPE DUNCAN PATTERSON<br>Defendant in Pro Per<br>4514 Chamblee Dunwoody Rd., 238<br>Atlanta, GA 30338-6202 | SILVERMAN, SMITH & RICE, P.C.<br>Attorneys for Defendant Michael G. Harbin<br>Robert W. Smith (P31192)<br>151 S. Rose Street<br>707 Comerica Building<br>Kalamazoo, MI 49007<br>(269) 381-2090<br><br>MILLER, CANFIELD, PADDOCK & STONE, PLC<br>Attorneys for Defendant Harbin's, Inc.<br>Kurt P. McCamman<br>444 West Michigan Avenue<br>Kalamazoo, MI 49007<br>(269) 381-7030 |

_____/

## BRIEF IN SUPPORT OF DEFENDANT MICHAEL G. HARBIN'S MOTION FOR SUMMARY JUDGMENT

## REQUEST FOR ORAL ARGUMENT

Defendant Michael G. Harbin ("Harbin"), by and through his attorneys SILVERMAN, SMITH & RICE, P.C. in support of his motion for summary disposition under Fed. R. Civ. P. 56(b), says as follows:

## 1.0 BACKGROUND INFORMATION

Plaintiff Steelcase, Inc. ("Steelcase") is a Michigan corporation engaged in the business of manufacturing and marketing of office furniture and equipment. It does business through independent dealerships throughout the United States. Steelcase manufactures and sells its product in the State of Alabama, and employs representatives in both the State of Alabama and the State of Michigan who work with Alabama dealerships. Defendant Harbin's, Inc. was such a dealership.

Harbin's, Inc. was incorporated in 1966 in Delaware. It was owned by the family of Harbin. Harbin purchased the stock and reincorporated it in Alabama in 1990. Harbin's, Inc. was the one of the oldest Steelcase dealers in Alabama. Harbin's, Inc. began to experience significant financial difficulty in mid to late 2003. That culminated in Harbin's, Inc.'s lender calling its loan and taking possession of all of Harbin's, Inc.'s assets and Harbin giving a deed in lieu of foreclosure to the building in which Harbin's, Inc. did business.

In January of 2004, Steelcase filed its initial complaint solely against Harbin's, Inc. claiming damages in the amount of $368,239.78. Steelcase obtained a default judgment against Harbin's, Inc. on December 1, 2004, in the amount of $385,275.79 plus court costs.

On October 20, 2004, Steelcase filed a first amended complaint adding as defendants, Harbin and his exwife Hope D. Harbin-Patterson ("Patterson"), and alleging claims against both of them on personal guaranties attached to its first amended complaint. At a Rule 16 Scheduling Conference telephonically conducted on December 15, 2004, Steelcase expressed a desire to depose Harbin for purposes of adding a fraudulent

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**      Page 2      Case No.: 1:04cv0026

conveyance claim to its complaint. That deposition was conducted. Steelcase has now filed a Second Amended Complaint (the "Complaint"). It adds a further claim against Harbin claiming that this Court should pierce the corporate veil of Harbin's, Inc. and hold Harbin personally liable for Harbin's, Inc.'s debt to Steelcase.

**2.0  STATEMENT OF FACTS**

As noted in a memo in Steelcase's file **(Exhibit 1)**, Harbin's, Inc. has been in business since 1949. It became an Alabama corporation in 1990. It has been a Steelcase dealer since about 1966. Harbin became involved with Harbin's, Inc. when it was incorporated in Alabama in 1990. He was the sole-shareholder, director, and officer, and he remained so when it was forced to go out of business in April of 2004. From the time that Harbin became involved with Harbin's, Inc. in 1990, Steelcase began asking that he sign a security agreement on behalf of Harbin's, Inc. and a personal guaranty **(Exhibit 2)** Harbin's, Inc. never did execute a security agreement with Steelcase and the only personal guaranties signed by Harbin are limited to specific purchase orders. They are attached to the Complaint.

Harbin's, Inc. began to experience a decline in sales in late 2000. As noted in **(Exhibit 1)**, Harbin's, Inc. showed a profit for fiscal year-end 2001, however, business continued to decline. Steelcase placed Harbin's, Inc. on a credit hold in November of 2002 as a result of financial difficulties and an inability to keep Steelcase paid up to date. Nevertheless, Steelcase continued to conduct business with Harbin's, Inc.

In February of 2003, Steelcase retained counsel to demand payment. In May of 2003, Steelcase offered to forebear on legal action to give Harbin's, Inc. time to repay

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's
Motion for Summary Judgment**        Page 3        Case No.: 1:04cv0026

Steelcase provided Harbin would sign a personal guaranty for the amount owed to Steelcase and a forbearance agreement. Harbin refused **(Exhibit 1)**.

Steelcase terminated its credit relationship with Harbin's, Inc. on November 18, 2003. As a result, Harbin's, Inc. was forced to go out of business on April 30, 2004. Harbin (through a separate entity) owned the building in which the Harbin's, Inc. dealership was located. As a result of Harbin's, Inc. going out of business, Harbin was forced to execute a deed in lieu of foreclosure to the mortgagee of the building. So when the business closed down, the building was taken over by the mortgagee.

Harbin's, Inc. did not close until after conducting a lengthy going out of business sale under the supervision of Colonial Bank. All of the revenue taken from those sales was taken by Colonial Bank (**Exhibit 3** - Harbin's deposition testimony pp. 65 and 66). In January of 2004, Harbin's, Inc. sold its book of business to Partners in Business, Inc., (a/k/a My Office Products.com) (**Exhibit 4** - Harbin's deposition testimony p. 49). Partners in Business, Inc. paid Harbin's, Inc. 5% of all revenue generated for the next year by former customers of Harbin's, Inc. Harbin's, Inc. used those revenues to pay payroll taxes, city sales taxes, use taxes, accounting fees, and attorney fees.

Steelcase actually filed its lawsuit before Harbin's, Inc. went out of business. At that time, apparently Steelcase's counsel had yet to discover the personal guaranties so Harbin was not named in the original complaint. When Harbin's, Inc. closed its doors on April 30, 2004, Harbin moved out of Montgomery, Alabama to a second home he had in Florida where he lives now. As he testified (**Exhibit 5** - Harbin's deposition testimony p. 126) he did not retain corporate records, (with the exception of those necessary to Harbin's, Inc.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**   Page 4   Case No.: 1:04cv0026

for bankruptcy if that became prudent), "...I walked out of that building on April 30 with bad memories and nightmares and I didn't look back..."

The records retained by Harbin were provided to Steelcase. They included accounts payable lists, check registers, and the checkbooks. Harbin's, Inc. had no assets when it closed, only debt.

## 3.0 LAW AND ARGUMENT

### 3.1 MOTION FOR SUMMARY JUDGMENT

#### 3.1.1 Standard of Review

The standard of review for summary judgment under Rule 56 is set forth in <u>Dean v Utica Comm. Schools</u>, 345 F. Supp. 2d 799, 803-804 (2004) as follows:

> Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. <u>Fed. R. Civ. P. 56(c)</u>. The moving party bears the initial responsibility of demonstrating that there is an absence of a genuine issue of material fact. <u>*Celotex Corp. v Catrett*, 477 U.S. 317, 323; 91 L. Ed. 2d 265, 106 S. Ct. 2548; 477 U.S. 317, 91 L. Ed. [2d] 265, 106 S. Ct. 2548 (1986)</u>. Material facts are determined by the substantive law in the case. <u>*Anderson v Liberty Lobby*, 477 U.S. 242, 247, 91 L. Ed. [2d] 202, 106 S. Ct. 2505 (1986)</u>. All inferences must be made in a light most favorable to the non-moving party. <u>*Matsushita Electric Industrial Co. v Zenith Radio Corp.*, 475 US 574, 586, 89 L. Ed. 2d 538, 106 Supp. Ct. 1348 (1986)</u>.

#### 3.1.2 <u>Harbin's Guaranty Does Not Guarantee the Present Harbin's, Inc. Debt to Steelcase.</u>

Harbin is entitled to summary judgment on Count II because the guaranties have been paid in full.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's
Motion for Summary Judgment**      Page 5      Case No.: 1:04cv0026

Harbin and Patterson signed two personal guaranties **(Exhibits 6 and 7)**. These guaranties are attached to Steelcase's complaint. They were signed in 1993, less than two months apart. Steelcase contends that the guaranties were intended to guarantee all of Harbin's, Inc.'s corporate debt to Steelcase. Steelcase stakes its claim on ¶ 4 of the two guaranties. Paragraph 4 states that the guaranties:

> [S]hall continue as to any and all **Indebtedness** incurred or arising prior to receipt by Creditor of written notice of the termination hereof from the undersigned. (Emphasis added.)

And, of course, Steelcase denies having ever received notice of termination (although Harbin testified that he sent it (**Exhibit 8** - Harbin's deposition testimony pp. 43 and 153) to make sure that there was no misunderstanding that the purchase orders had all been paid in full). This language, contends Steelcase, means that Harbin and Patterson personally guaranteed all debt of Harbin's, Inc. after the first guaranty was signed in June of 1993.

Harbin contends that he acquired controlling interest of Harbin's, Inc. in March of 1990 (**Exhibit 9** [Affidavit of Michael G. Harbin]). Harbin was asked by Steelcase to sign a continuing personal guaranty in 1990, but he refused. Harbin's, Inc. was asked on a number of occasions by Marvis James, Steelcase's Regional Credit Manager for the South and the person mainly responsible for collecting the money Harbin's, Inc. owed to Steelcase, to grant Steelcase a security interest in its accounts receivable and inventory, but Harbin refused. Nevertheless, Steelcase continued to grant credit to Harbin's, Inc. prior to the signing of the two personal guaranties at issue in this case.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**        Page 6        Case No.: 1:04cv0026

As Harbin explains in his Affidavit **(Exhibit 9)**, Harbin's, Inc. placed a large order with Steelcase for ALFA Insurance Co. Steelcase again asked Harbin for a continuing personal guaranty. Harbin refused. Steelcase refused to ship. Harbin's, Inc. advised Steelcase that it would fill the ALFA Insurance Co. order elsewhere. Shortly thereafter, Steelcase asked Harbin if he would sign a personal guaranty limited to the ALFA Insurance Co. project. Harbin agreed and signed the June guaranty. Harbin's, Inc. received a second large order with ALFA Insurance Co. several weeks later. Steelcase asked that he personally guarantee payments for the second order as well. Harbin signed the August guaranty guaranteeing payment on the second order **(Exhibit 7).**

Clearly, both guaranties were form documents intended to guarantee virtually all debt to Steelcase, but they were altered for these two specific transactions. In ¶ 1 of the two guaranties, the debt to be covered is broad and all encompassing, including:

> [A]ny and all existing and future indebtedness and liabilities of every nature and kind, including all renewals, extensions, and modifications thereof, now or hereafter owing from Debtor to Creditor, however and whenever created, arising, evidenced or acquired and all interest accrued thereon (hereinafter collectively called the **"Indebtedness"**). (Emphasis added.)

Following that broad and all encompassing language, the guaranties each contained specific limitations. The **Indebtedness** is defined as limited to that indebtedness **in connection with** specifically identified purchase order numbers. Each guaranty is "<u>connected with</u>" a different set of specifically identified purchase order numbers.

Steelcase has admitted that all of the purchase orders listed in the June guaranty and the August guaranty have been paid in full **(Exhibit 10).**

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**      Page 7      Case No.: 1:04cv0026

Each of the guaranties are to be interpreted according to the laws of the State of Michigan (¶ 9). In <u>Bandit Industries v Hobbs International, Inc</u>., 463 Mich 504, 511 (2001) the court noted:

> ...a guaranty contract like a surety contract is a special kind of contract. As this court stated in <u>Ann Arbor v Massachusetts Bonding & Insurance Co., 282 Mich 378, 380; 276 N.W. 486 (1937)</u>. The undertaking of a surety is to receive a strict interpretation. The surety has a right to stand on the very terms of the contract. To the extent and in the manner and under the circumstances pointed out in his obligation, the surety is bound, and no further. The liability of a surety is not to be extended by implication beyond the terms of his contract. <u>Miller v Steward, 22 U.S. (9 Wheat) 680; 6L. Ed. 189 (1824)</u>. A surety cannot be held beyond the precise terms of his agreement. <u>Walsh v Bailie, 10 Johns, 180 (NY Supp., 1813)</u>. As said by *Chancellor Kent,* 'The claim against a surety is *strictissimi juris.*' 3 *Kent* Commentaries (14th Ed.), p. 217. See also <u>Fellows v Prentiss, 3 Denio 512, 1846 N.Y. LEXIS 177 (45 Am Dec. 484)</u> (N.Y. 1846).

The <u>Bandit Industries</u> court went on to note (p. 514) that:

> ...a personal guarantee cannot be implied from language that fails to clearly and unambiguously reflect an intention to assume such a responsibility.

The guaranties at issue in this case are not ambiguous. **Indebtedness** referred to in ¶ 1 is the same **Indebtedness** referred to in ¶ 4. **Indebtedness** defined in ¶ 1 was to be referred to as **Indebtedness (with a capital I)**. **Indebtedness** is capitalized in ¶ 4. So clearly it relates to the same indebtedness. **The indebtedness in ¶ 1 is limited to certain purchase orders**. That is true in both guaranties. So the logical interpretation of ¶ 4 is that the guaranties will continue until the specifically identified purchase orders are paid in full. They have been. Moreover, when "the parties use both general and specific words, the

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**         Page 8         Case No.: 1:04cv0026

latter will ordinarily be controlling." <u>Sobel v Steelcraft Piston Ring Sales Inc.</u>, 294 Mich 211, 219 (1940) citing <u>Goldberg v Cities Service Oil Co.</u>, 275 Mich 199 (1936). <u>Thomson Electric Welding Co. v Peerless Wire Fence Co.</u>, 190 Mich 496 (1916) is particularly instructive in demonstrating why these guaranties must be limited to the specifically identified purchase orders.

  Steelcase has yet to produce a single document which existed prior to the filing of the complaint, that indicates that Steelcase ever thought that Harbin had signed a continuing guaranty. There were no threats to sue him on his personal guarantee. There are no reminders that he signed a personal guaranty. There is no correspondence requesting a personal financial statement. There is no interoffice correspondence discussing Harbin's personal assets. Moreover, Steelcase asked Harbin to sign a personal guaranty in May **(Exhibit 1)**. He refused. Why would Steelcase ask Harbin to sign a personal guaranty if he already had, not once, but twice? In fact, Marvis James testified in his deposition (**Exhibit 11** - Marvis James deposition testimony p. 36) that the guaranties were limited to those purchase orders identified in ¶ 1. So even the person who induced Harbin to sign the limited guaranties in 1993 did not believe that they guaranteed the present debt.

  Marvis James also testified (**Exhibit 12** - Marvis James deposition testimony p. 42) that the August guaranty was obtained because Harbin submitted purchase orders after those referenced in the June guaranty. Marvis James testified that normally, if he had a personal guaranty on an account, he would have communicated that information to the dealer when he was trying to collect a debt, and he did not do that in this case (**Exhibit 13**

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**    Page 9    Case No.: 1:04cv0026

Marvis James deposition testimony p. 50). Marvis James also testified that he would ask for personal financial statements if there was a personal guaranty by a delinquent dealer (**Exhibit 14** - Marvis James deposition testimony pp. 51 and 52). Steelcase did not request personal financial statements.

Steelcase's attempt in this case to hold Harbin and Patterson liable for all corporate debt to Steelcase, in view of the plain language in the guaranties, the testimony of the Regional Credit Manager, and the complete lack of any correspondence, or other documentation, to suggest that Steelcase ever considered these guaranties continuing prior to the filling of this lawsuit, is shameful. The specific nature of the two guaranties is so clear on their face, and the interpretation placed upon them by Steelcase such a reach, as to be frivolous. The complete lack of any correspondence or other documentation to suggest that Steelcase interpreted these guaranties to be general and continuing, rather than specific and limited, suggests that Count II is nothing more than a "flier" likely emanating from the mind of one of its attorneys. Wherever it came from, it ought not be countenanced. Count II should be dismissed.

### 3.1.3 There is No Factual Support for Piercing the Corporate Veil.

In Spartan Tube & Steel v Himmelspach, 102 F. 3d 223, 226 (6th Cir.1996) the Court cited the criteria for piercing the corporate veil in Michigan:

> The general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice. See *Wodogaza v H & R Terminals, Inc.,* 161 Mich App 746, 756, 411 N. W. 2d 848, 852 (1987). *See also Wells v Firestone Tire and Rubber Co.,* 421 Mich 641, 650; 364 N. W. 2d 670, 674 (1984). A court may find that one entity is the alter ego of another and pierce the veil upon proof of three elements: first the corporate entity

> must be a mere instrumentality of another; second the corporate entity must be used to commit a **fraud or wrong**; and third there must have been an **unjust loss or injury** to the plaintiff... (Emphasis added.)

The requirements for piercing the corporate veil are very similar in the State of Alabama where Harbin's, Inc. was incorporated. In <u>Backus v Watson</u>, 619 So. 2d 1342, 1345; 1993 Ala. LEXIS 356 (1993) the court noted the factors to be considered when determining whether or not to pierce the corporate veil:

> Piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separate and apart from its shareholders is well settled in this state. <u>Co-Ex Plastics, Inc. v Alapak, Inc.</u>, 536 So. 2d 37 (Ala. 1988). <u>Aloma Coat Corp. v Behr</u>, 408 So. 2d 496 (Ala. 1981). The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate identity. <u>Messick v Moring</u>, 514 So. 2d 892 (Ala. 1987); <u>Forester & Jerue, Inc. v Daniels</u>, 409 So. 2d 830 (Ala. 1982). The fact that a corporation is under-capitalized is not alone sufficient to establish personal liability. <u>Co-Ex Plastics, Inc. supra, East End Memorial Assoc. v Egerman</u>, 514 So. 2d 38 (Ala. 1987). To pierce the corporate veil, a plaintiff **must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequence.** <u>Washburn v Rabun</u>, 487 So. 2d 1361 (Ala. 1986); <u>Cohen v Williams</u>, 294 Ala. 417, 318 So. 2d 279 (1975). (Emphasis added.)

Clearly then, under Michigan law and Alabama law, fraud or wrongdoing is an essential element[1] for piercing the corporate veil. It is difficult to tell from the Complaint what wrongdoing Harbin is being accused of which would justify a piercing claim.

---

[1] In his Order Granting Steelcase's Motion to Amend the Complaint, Magistrate Judge Scoville indicates that Harbin "incorrectly argues that Michigan law requires a showing of fraud in order to pierce the corporate veil." Magistrate Judge Scoville was mistaken. Harbin took the position then, and takes the position now, that Michigan and Alabama law require proof of **either fraud, or wrongdoing**.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**        Page 11        Case No.: 1:04cv0026

Paragraph 33 of the Complaint says that Harbin was the sole corporate officer, director, and dominant shareholder of Harbin's, Inc., but this is not wrongdoing.

In <u>Food Land</u> Distributors v Al-Naimi, 220 Mich App 453, 456 (1996), the court noted:

> The law treats a corporation as an entirely separate entity from its stockholders, even where one person owns all the corporation's stock.

Michigan law permits a corporate board consisting of one director. See MCLA 450.1505(1).

Under MCLA 450.1231 a corporation may establish bylaws containing:

> ...any provision for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation.

So there is no requirement that a corporation have more than one officer.

Paragraph 34 of Steelcase's Complaint alleges that Harbin "controlled all aspects of [Harbin's, Inc.] business and financial operations, and he had full control over all of the Corporation's assets." It stands to reason that as the sole-officer, director, and shareholder of Harbin's, Inc., Harbin would have such control. Since it was lawful for Harbin to maintain those positions, there is nothing wrongful about having complete control.

Paragraph 35 of the Complaint alleges that Harbin "intermingled his personal finances and assets and the finances and assets of other business entities that he owned in whole or in part with the finances and assets of Harbin's [Inc.]."

Paragraph 36 accuses Harbin of taking corporate money for his own personal use in disregard of the corporate existence. Paragraph 37 alleges that between January 1, 2001 and April 2004, Harbin conducted the business of Harbin's, Inc. in complete disregard of its corporate existence and for his own personal convenience.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**     Page 12     Case No.: 1:04cv0026

Paragraph 38 and 39 allege that Harbin failed to properly safeguard corporate records and that gives rise to a presumption that such records would show a lack of adherence to the required corporate formalities. Paragraph 41 alleges that Harbin's, Inc. was under-capitalized. Paragraph 42 alleges that Harbin's, Inc. has no assets and is unable to pay its debts. Paragraphs 43 and 44 contend that Harbin's, Inc. was the alter ego of Harbin and that Harbin's disregard of the formalities of Harbin's, Inc. required piercing the corporate veil to avoid injustice to Steelcase.

As indicated in Harbin's Affidavit, the few times that he intermingled corporate funds and personal funds it was done for the sole benefit of Harbin's, Inc. **(Exhibit 9).** For instance, he testified in his deposition (**Exhibit 15** - Harbin's deposition testimony pp. 90 - 98) that one of the Corporation's vendors, for a time, required certified funds on delivery. In order to satisfy that vendor and save a few dollars for Harbin's, Inc., he had the bookkeeper write a check to him personally, deposited the check into his personal account, and wrote a check on the same account to the vendor and had his personal bank certify it. Because his personal bank provided free certified checking and the corporate bank required a $10 fee, Harbin saved Harbin's, Inc. $10 per transaction. It is not alleged that this was wrongful, or that Steelcase suffered injury as a result.

In a number of other instances, as Steelcase learned during Harbin's deposition, he did not take a paycheck when he felt that corporate funds were insufficient to provide him with a paycheck. When funds were available, the corporate bookkeeper issued a paycheck. There is nothing in the Complaint which suggests that these actions either defrauded Steelcase, or were wrongful.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's
Motion for Summary Judgment**        Page 13        Case No.: 1:04cv0026

As noted in Spartan Tube & Steel, supra, the second of the three elements Steelcase must show in order to prevail on a piercing claim is that Harbin's actions "must be used to commit a fraud or wrong..." Id at p. 226. The Complaint does not indicate what alleged action is wrongful. However, it is clear from the facts set forth in the exhibits to this brief, that Steelcase was very familiar with Harbin's, Inc. and Harbin.

In Simoneau v Transcrkrit Corp., 1998 U.S. Dist. LEXIS 8458 (N.D. Ill.) citing Klager v Robert Meyer Co., 415 Mich 402; 415 n. 6; 329 N.W. 2d 721 (1982) the court noted that a "plaintiff may not seek to disregard the corporate entity when he is fully aware of the character of the corporation with which he deals."

The Simoneau court also noted, citing Finley v Union Stock Land Bank of Detroit, 281 Mich 214, 221-222; 274 N.W. 768, 770 (1937), that

> [A] claimant of the subsidiary corporation cannot be said to have been affected by the parent's use of the subsidiary as a mere instrumentality, if with knowledge of all the facts at the time he entered into the transaction with the subsidiary, he accepted or approved the relationship between the two corporations.

In this case, Steelcase had been dealing with Harbin's, Inc. and Harbin for more than twelve (12) years when the debt began to accrue. Steelcase knew that Harbin would not consent to personal liability, nor even to giving Steelcase security. Steelcase requested and received financial statements for many years. If Harbin's, Inc. was undercapitalized, Steelcase knew it and consented to it by continuing to provide credit to Harbin's, Inc. In Klager, supra, the court was presented with a similar fact situation and refused to pierce the corporate veil where there was no indication of wrongdoing.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**     Page 14     Case No.: 1:04cv0026

The third element, as set forth in Spartan Tube & Steel, supra, is that "there must have been an unjust loss or injury to the Plaintiff..." Id. at p. 226. There is no question that Steelcase suffered a loss. Was it unjust for Steelcase to suffer this loss under these circumstances such that Harbin should be personally liable for it? That would have to depend upon a showing of wrongdoing by Harbin which led to Steelcase's loss. Otherwise, every sole shareholder would be personally liable to its creditors whenever their corporation lost money. So in order for Steelcase to prevail on its piercing claim, it must show that Harbin misused the corporate form such that it became his own instrumentality, that such misuse was wrongful as to Steelcase and unjustly resulted in Steelcase's loss.

As indicated in the Statement of Facts and exhibits attached hereto, Steelcase knew exactly who it was dealing with and what the financial condition of Harbin's, Inc. was, but continued to do business with and advance credit to Harbin's, Inc.

In ¶¶ 38 and 39 of the Complaint (Count III) Steelcase alleges that Harbin did not safeguard corporate records and by his own admission they do not exist and his "failure to maintain or retain corporate records give rise to a presumption that they would show lack of adherence to required corporate formalities." Presumably this allegation is intended to invoke the evidentiary rule set forth in Long v Earle, 277 Mich 505, 516 (1936) which is explained as follows:

> The willful destruction, suppression, alteration or fabrication of documentary evidence properly gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts. *Jones on Evidence (2d Ed.), § 18.*

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's
Motion for Summary Judgment**　　　　　　　Page 15　　　　　　　Case No.: 1:04cv0026

> One who willfully destroys documentary evidence of a controversy in which he is interested cannot complain if courts give such act the inferences which naturally follow it, or the unfavorable presumptions that naturally arise. <u>Pitcher v Roger's Estate, 199 Mich 114</u>.
>
> The object of the rule of law which requires the production of the best evidence of which the facts sought to be established are susceptible is the prevention of fraud; for, if a party is in possession of the evidence, and withholds it, and seeks to substitute inferior evidence in its place, the presumption naturally arises that the better evidence is withheld for fraudulent purposes, which its production would expose and defeat. When it appears that this better evidence has been voluntarily and deliberately destroyed, the same presumption arises, and, unless met and overcome by a full explanation of the circumstances, it becomes conclusive of a fraudulent design, and all secondary or inferior evidence is rejected. <u>Davis v Teachout's Estate, 126 Mich 135 (86 Am. St. Rep. 531)</u>.
>
> In <u>Brandt v C. F. Smith & Co., 242 Mich 217, 222</u> it is said:
>
> Failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party.

The evidence will not support Steelcase's proposed presumption. There will be no testimony that Harbin destroyed corporate records. He left them behind when Harbin's, Inc. closed its doors for the final time. To his knowledge they were destroyed when the bank took possession of the building and sold it. This lawsuit was pending at that time. Harbin was not requested to maintain corporate records. Harbin does not dispute the debt of Harbin's, Inc. There is no allegation and no factual support that Harbin intentionally destroyed corporate records. There is no allegation of a duty nor factual support for a duty to maintain corporate records beyond those necessary to establish creditors' claims. Absent such allegations, with factual support, this presumption cannot apply.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's Motion for Summary Judgment**     Page 16     Case No.: 1:04cv0026

Count III of the Complaint is simply bereft of any allegations of wrongdoing and any allegation that such wrongdoing resulted in Steelcase's loss. The allegations are full of buzz words such as "alter ego", "mere instrumentality", "under-capitalized", "intermingled", and "lack of adherence to corporate formalities." These allegations are all form and no substance. Steelcase's own records show no evidence of wrongdoing and, therefore, no evidence that wrongdoing resulted in its loss. This is just another story of a business failure. Steelcase elected to do millions of dollars of business with Harbin's, Inc. without the protection of a personal guaranty and a security interest. When Harbin's, Inc.'s business failed, Steelcase lost money. That is unfortunate, but it is a common business risk. Without proof, or even allegation, of wrongdoing and resulting loss, there is no genuine issue of material fact as to Count III and Harbin is entitled to judgment as a matter of law.

## 4.0 RELIEF REQUESTED

Harbin requests this Court determine that there is no genuine issue as to any material fact as to Counts II and III and that Harbin be awarded summary judgment as to both of these Counts. Harbin further asks that this Court find that Counts II and III are unsupported in fact and unwarranted under existing law.

Dated: <u>April 29, 2005</u>　　　　　　　　　SILVERMAN, SMITH & RICE, P.C.
　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant Michael G. Harbin


　　　　　　　　　　　　　　　　　　　　　　/s/ Robert W. Smith
　　　　　　　　　　　　　　　　　　　　　Robert W. Smith (P31192)

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Support of Michael G. Harbin's**
**Motion for Summary Judgment**　　　　Page 17　　　　Case No.: 1:04cv0026