### Page 47

1  A  I don't recall a specific conversation concerning that, no.
2  Q  Do you recall any general, just generally, do you recall any
3     conversation with Mr. Harbin where that issue was raised?
4  A  I again can't recall any specific conversation with Michael
5     Harbin about that.
6  Q  Without dealing in specifics, are you aware that he was
7     making that complaint?
8  A  I'm aware that was a concern of his, yes.
9  Q  How did you become aware of that?
10 A  I believe it might have been, you know, from maybe a market
11    manager, you know, at the time.  Issues of pricing generally
12    were not directed to the Credit Department because we had
13    nothing to do with the pricing.
14 Q  Well, I understand that, but I'm sure that you heard those
15    complaints from dealers, didn't you; pricing complaints?
16        MR. MARCH:  Object to the form of the question.
17    This is way too broad.
18        THE WITNESS:  Yeah, I can't specifically recall any
19    particular conversations like that.
20 BY MR. SMITH:
21 Q  So that never entered into any of your conversations with any
22    dealers, complaints about pricing?
23 A  I can't say if it did or didn't, you know.  It very well
24    could have, but I can't sit here and say specifically yes, I
25    recall this incident or that incident.

### Page 48

1  Q  What would you do with those complaints if a dealer made it
2     to you?  Who would you pass it along to?
3  A  We would generally probably pass it on, if it was material,
4     to the market manager, because that was their area they dealt
5     with.  We didn't deal with that.
6         (Exhibit 13 marked for identification.)
7  Q  I show you what's been marked as Deposition Exhibit Number 13
8     and ask if you can identify that.
9  A  Okay.
10 Q  That's a letter from you to Michael Harbin dated November 7,
11    2002; is that accurate?
12 A  That is correct.
13 Q  And you're concerned about Harbin's, Inc. owing Steelcase
14    over $400,000 dollars?
15 A  Yes.
16 Q  It looks like over $30,000 dollars is 90 days past due; is
17    that accurate?
18 A  That's accurate.
19 Q  And if you were to compare this to other dealers, would you
20    characterize this as a seriously delinquent account?
21 A  Yes, I would.
22 Q  And at some point you have to reach a decision what you're
23    going to do about collecting the account; right?  I mean,
24    that's your decision as a credit manager; is that right?
25 A  Yes.  We would at some point make a recommendation.

### Page 49

1  Q  The recommendation --
2  A  To management.
3  Q  -- goes where?
4  A  It would go to my immediate boss.
5  Q  Now if he makes a decision we have to do something, we've got
6     to do something more drastic about this account, does he go
7     to the Legal Department then?
8  A  Generally speaking, yes, he would certainly get the Legal
9     Department involved.
10 Q  Now is it ever your place to notify dealers that if they
11    don't act within a certain period of time, you're going to
12    have to file a lawsuit?
13 A  I would not communicate that to the dealer, no.
14 Q  At this time, November 7, 2002, when you sent this letter,
15    Steelcase was not secured; correct?
16        MR. MARCH:  Just a moment.  I object to the form of
17    the question.
18 BY MR. SMITH:
19 Q  You can go ahead and answer the question.
20 A  What type of security are you referring to?
21 Q  Any security.
22 A  We did not have a security interest at this time, no.
23 Q  Was it your understanding in November of 2002 that Mr. Harbin
24    was personally responsible on a personal guaranty?
25 A  My understanding at this time was that he was not.

### Page 50

1  Q  And as I understand your testimony, it wouldn't have been
2     your place, anyway, to remind Mr. Harbin that he had a
3     personal guaranty if you thought he had one; is that accurate
4     or not?
5  A  Could you -- I'm not quite understanding your question.
6  Q  Well, one of the things -- you're trying to get an account
7     paid, and you testified that you wouldn't threaten a lawsuit,
8     but would it ever be your place to remind a dealer that if he
9     doesn't pay, there's some personal liability involved if
10    perhaps the dealer had a personal guaranty?
11 A  If we had a personal guaranty on an account and the debt was
12    covered under a personal guaranty, yes, I could have
13    communicated that information to the dealer, yes.
14 Q  You didn't do that in this case?
15 A  No, I didn't.
16        (Exhibit 14 marked for identification.)
17 Q  I show you what's been marked as Exhibit Number 14.  Take a
18    moment to read that, if you would.
19 A  Okay.
20 Q  This is an e-mail from you to Steven Waugh; is that correct?
21 A  That's right.
22 Q  At the top of the page anyway, and it's dated November 8th of
23    2002; is that right?
24 A  That's correct.
25 Q  Who was Steven Waugh?



DEFENDANT'S EXHIBIT 13