UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEELCASE, INC. a Michigan
corporation,

   Plaintiff,

v

HARBIN'S, INC., an Alabama corporation,
MICHAEL G. HARBIN, and
HOPE DUNCAN PATTERSON,

   Defendants.

Case No.: 1:04cv0026
Hon. Robert Holmes Bell
Chief, U. S. District Judge

_____/

| MILLER, JOHNSON, SNELL & CUMMISKEY, P. L. C. | SILVERMAN, SMITH & RICE, P.C. |
|---|---|
| Jon G. March (P17065) | Robert W. Smith (P31192) |
| Attorneys for Plaintiff | Attorneys for Defendant Michael G. Harbin |
| 250 Monroe Avenue, N. W. - Ste 800 | 151 S. Rose Street |
| P. O. Box 306 | 707 Comerica Building |
| Grand Rapids, MI 49501-0306 | Kalamazoo, MI 49007 |
| (616) 831-1700 | (269) 381-2090 |

HOPE D. PATTERSON
Defendant in Pro Per
5626 Mill Race Court
Atlanta, GA 30338

_____/

**DEFENDANT MICHAEL G. HARBIN'S BRIEF IN RESPONSE TO PLAINTIFF STEELCASE, INC.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF PIERCING THE CORPORATE VEIL**

**1.0 INTRODUCTION**

On April 29, 2005, Defendant Michael G. Harbin ("Harbin") filed a Motion for Summary Judgment requesting summary judgment on all of the claims of Plaintiff Steelcase, Inc. ("Steelcase") against him including the claim of piercing the corporate veil.

On the same day Steelcase filed a Motion for Partial Summary Judgment. Steelcase did not, at that time, move for summary judgment with respect to its corporate veil piercing claim. However, on May 31, 2005, Steelcase filed a Motion for Leave to File Motion for Summary Judgment on the piercing claim and the Court granted that motion on the same day. Accompanying its motion for leave was Steelcase's Motion for Summary Judgment on Plaintiff's claim of piercing the corporate veil. Apparently the legal basis for Steelcase's summary judgment motion on the piercing claim can be found in its response to Harbin's Motion for Summary Judgment. Steelcase's Motion for Summary Judgment on the piercing claim has not been set for hearing. Steelcase has not requested an oral argument.

On June 17, 2005, this Court heard Harbin's Motion for Summary Judgment and Steelcase's cross-Motion for Partial Summary Judgment. This Court took those motions under advisement.

## 2.0 BACKGROUND INFORMATION

Steelcase is a Michigan corporation engaged in the business of manufacturing and marketing of office furniture and equipment. It does business through independent dealerships throughout the United States. Steelcase manufactures and sells its product in the State of Alabama, and employs representatives in both the State of Alabama and the State of Michigan who work with Alabama dealerships. Defendant Harbin's, Inc. was such a dealership.

The predecessor to Harbin's, Inc. began with Michael Harbin's grandfather in 1949. Harbin's, Inc. was incorporated in 1966 in Delaware. Harbin's, Inc. became a Steelcase dealer in 1966. Harbin's, Inc. was the one of the oldest Steelcase dealers in Alabama. Due

to a weak economy, Harbin's, Inc. lost a significant amount of money in 2002 (**Exhibit 1** - Harbin's affidavit). By mid to late-2003 Harbin's, Inc. found itself in significant financial difficulty. That culminated in the lender for Harbin's, Inc. calling its loan and taking possession of all of the assets of Harbin's, Inc. and Harbin giving a deed in lieu of foreclosure to the building in which Harbin's, Inc. did business.

Harbin was involved in several other businesses prior to the demise of Harbin's, Inc. He and several others started a business similar to Office Depot called Retail Enhancement Services, Inc. It was open for business only for approximately three years, between 1997 and 1999. As a result of a landlord/tenant dispute it went out of business and sold its assets to Harbin's, Inc. in 1999. (Harbin's deposition - excerpts attached to the Steelcase brief.)

Also in 1999, Harbin's, Inc. joined with Stern Brothers, Inc. to form a limited liability company called Harbin's - Stern Brothers, LLC. Harbin's, Inc. owned 51% of Harbin's - Stern Brothers, LLC. Stern Brothers, Inc. owned the other 49%. Stern Brothers, Inc. had been a used furniture and furniture repair business. After the formation of Harbin's - Stern Brothers, LLC, both Harbin's, Inc. and Stern Brothers, Inc. their entire business operations were run through Harbin's - Stern Brothers, LLC. The business combination was easy to accomplish because virtually the only change in the operation of both businesses were accounting changes. The only physical change was that the owner of Stern Brothers, Inc. utilized an office in the location of Harbin's, Inc. to perform various administrative tasks. Both companies continued to do business as they had in the past, but did business under the new LLC. Accounting functions were combined. (Harbin's deposition.)

Any income attributable to Harbin's, Inc. only, or Stern Brothers, Inc. only, belonged to the individual members and not the new entity. The combination did not last long. Harbin's, Inc. and Stern Brothers, Inc. split up in 2001. (Harbin's deposition.)

Harbin traces the demise of Harbin's, Inc. to the events of September 11, 2001. Harbin's, Inc. showed a small profit for the year 2001. Harbin's, Inc. showed a considerable loss in 2002. (Harbin's deposition.)

In January of 2004, Steelcase filed its initial complaint solely against Harbin's, Inc. claiming damages in the amount of $368,239.78. Steelcase obtained a default judgment against Harbin's, Inc. on December 1, 2004, in the amount of $385,275.79 plus court costs.

On October 20, 2004, Steelcase filed a First Amended Complaint adding as defendants, Harbin and his exwife Hope D. Harbin-Patterson ("Patterson"), and alleging claims against both of them on personal guaranties attached to its first amended complaint. At a Rule 16 Scheduling Conference telephonically conducted on December 15, 2004, Steelcase expressed a desire to depose Harbin for purposes of adding a fraudulent conveyance claim to its complaint. That deposition was conducted. Steelcase has now filed a Second Amended Complaint. The Second Amended Complaint, instead of alleging a fraudulent conveyance claim, alleges a claim requesting this Court to pierce the corporate veil of Harbin's, Inc. and hold Harbin personally liable for the debt of Harbin's, Inc. The motion for leave to file the Second Amended Complaint was filed March 1, 2005 - ten months after Harbin's, Inc. had ceased doing business.

**3.0 LAW AND ARGUMENT**

    **3.1 STANDARD OF REVIEW**

The standard of review for summary judgment under Rule 56 is set forth in <u>Dean v Utica Comm. Schools</u>, 345 F. Supp. 2d 799, 803-804 (2004) as follows:

> Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. <u>Fed. R. Civ. P. 56(c)</u>. The moving party bears the initial responsibility of demonstrating that there is an absence of a genuine issue of material fact. <u>Celotex Corp. v Catrett</u>, 477 U.S. 317, 323; 91 L. Ed. 2d 265, 106 S. Ct. 2548; 477 U.S. 317, 91 L. Ed. [2d] 265, 106 S. Ct. 2548 (1986). Material facts are determined by the substantive law in the case. <u>Anderson v Liberty Lobby</u>, 477 U.S. 242, 247, 91 L. Ed. [2d] 202, 106 S. Ct. 2505 (1986). All inferences must be made in a light most favorable to the non-moving party. <u>Matsushita Electric Industrial Co. v Zenith Radio Corp., 475 US 574, 586, 89 L. Ed. 2d 538, 106 Supp. Ct. 1348 (1986)</u>.

    **3.2 THE TEST FOR PIERCING THE CORPORATE VEIL**

The test for piercing the corporate veil in Michigan was recently articulated in <u>UAW v Aguirre</u>, 2005 U.S. App. LEXIS 9954; 2005 Fed. App. 0236P (6th Cir.) at p. 12 as follows:

> [W]e have held that the corporate veil may be pierced if the court finds "substantial reasons for doing so" after considering three general factors (1) "the amount of respect given to the separate identify of the corporation by its shareholders;" (2) "the degree of injustice visited on the litigants by recognition of the corporate entity" and (3) "the fraudulent intent of the incorporators." (Citations omitted.) In analyzing these three general factors, courts frequently consider more specific factors such as under-capitalization of the corporation, maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham. (Citations omitted.)

Steelcase, Inc. v Michael G. Harbin, et. al.
Brief in Response to Motion for Summary
Judgment on Piercing the Corporate Veil Claim     Page 5     Docket No.: 1:04cv0026

### 3.2.1 RESPECT GIVEN TO THE SEPARATE IDENTITY OF THE CORPORATION BY ITS SHAREHOLDERS

Steelcase attempts to satisfy the first prong of the piercing test by pointing to the fact that Harbin has been unable to produce all of the corporate records of Harbin's, Inc. that Steelcase believes he should be able to produce. Steelcase argues that failure ought to redound to the benefit of Steelcase. In support of this proposition Steelcase cites <u>Long v Earle</u>, 277 Mich 505, 516; 269 N.W. 577 (1936). In <u>Long</u> the court cited <u>Jones on Evidence</u> (2d Ed. § 18) as follows:

> The willful destruction, suppression, alteration, or fabrication, of documentary evidence properly gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts.

There is no evidence, or allegation, that Harbin destroyed any records. His affidavit **(Exhibit 1)** indicates that he left the records behind when Harbin's, Inc. closed. He assumed they were destroyed by the new owner of the building. Steelcase asserts no duty that Harbin had to retain the records that Steelcase wants. Steelcase alleges that the records were in Harbin's control, but they were not in Harbin's control when Steelcase first alleged a claim of piercing the corporate veil. That occurred ten months after Harbin abandoned the records. Steelcase has cited no case, rule of evidence, or statute, which requires a presumption against Harbin simply because records were not retained after a business closed.

On p. 12 of Steelcase's brief Steelcase points out that when Harbin's, Inc. filed a Motion for Change of Venue (before Harbin was a defendant in this case), its lawyers

argued to this Court that "all of the documents necessary for determination of the issues raised by Steelcase's complaint are located in Alabama." That was true as to Harbin's, Inc. However, Harbin's, Inc. went out of business and a default judgment was entered against it. Harbin's, Inc. elected not to defend. Harbin had no knowledge that he would be made a defendant and that Steelcase would attempt to pierce the corporate veil some ten (10) months after he walked out of Harbin's, Inc. for the last time. His attorneys told him what records to retain and he did retain those records **(Exhibit 1)**. Since Harbin's, Inc. was out of business and this case was going to default, the records referenced by counsel for Harbin's, Inc. were not needed.

Steelcase also argued that Harbin cannot "claim that his records would show compliance with corporate formalities when it was his own conscious decision to abandon them that led to their destruction." (Steelcase's brief at p. 12.) In support of this proposition Steelcase cites Labadie Coal Co. v Black 672 F. 2d 92, 97 (D.C. Cir. 1984). That case is inapposite. In Labadie the defendant either had the documents, or had access to them. In this case, they were gone when Steelcase filed its claim. Moreover, Steelcase has the burden of proving non-compliance with corporate formalities. Instead, Steelcase attempts to take advantage of its own lack of diligence in failing to insure that the corporate records it wanted to inspect were preserved. Steelcase could have sought protective relief requesting the preservation of all records of Harbin's, Inc. when it filed its complaint. Such relief was available because Harbin's, Inc. was going through a lender controlled going out of business sale and all corporate records were still being maintained. Steelcase now attempts to shift its burden of proof by taking advantage of its own lack of due diligence

and blaming Harbin for failure to anticipate that almost a year later Steelcase would attempt to pierce the corporate veil.

Steelcase also cites <u>Hamann v Ridge Tool Co.</u>, 213 Mich App 252, 255; 539 N. W. 2d 753 (1995) at p. 12 of its brief for the proposition that this alleged evidentiary presumption should apply no matter whether the evidence was destroyed, or lost accidentally. In <u>Hamann</u>, supra, a products liability case, plaintiff's expert was allowed to opine that a casting was flawed. The casting was lost while in plaintiff's custody. Defendant's expert was unable to examine it. The court ruled that plaintiff's expert should not have been able to testify that the casting was flawed because plaintiff was responsible for losing the evidence. There is a huge difference between refusing to allow a plaintiff to take advantage of evidence it lost, and holding a defendant responsible for lost evidence he had no duty to retain.

Finally, Steelcase makes no showing that it even asked for any records pertaining to the observance of corporate formalities by Harbin's, Inc. In fact, Steelcase has not even asked Harbin's, Inc. to produce corporate minutes, bylaws, or other records pertaining to corporate formalities. Steelcase assumes those records are not available because the operational records are not available. The organizational records of Harbin's, Inc. are available and will show proper observance of corporate formalities.

### 3.2.2 <u>COMMINGLING CORPORATE AND PERSONAL FUNDS</u>

Harbin testified in his deposition that in September of 2003, a Harbin's, Inc. vendor (S. P. Richards Co.) began to demand payment by certified check upon delivery. The corporate account required a $10.00 fee for certified checks. Harbin's personal account

Steelcase, Inc. v Michael G. Harbin, et. al.
Brief in Response to Motion for Summary
Judgment on Piercing the Corporate Veil Claim     Page 8     Docket No.: 1:04cv0026

required no fee. For a time Harbin would go to his personal bank (a block away) and obtain a certified check payable to S. P. Richards Co. He paid S. P. Richards Co. out of his personal checking account and Harbin's, Inc. reimbursed him **(Exhibit 1)**. This is not commingling. *Blacks Law Dictionary, 6th Ed., West Publishing Co. © 1990, p. 271*, defines "commingle" as: "To put together in one mass; *e.g.* to combine funds or properties into a common fund or stock." Typically, the reason that commingling is proscribed is because when funds are commingled the owner of the two separate funds that have been commingled cannot be identified. When the funds can be specifically identified they are not mingled. In this case, a check went out of Harbin's account to S. P. Richards Co. and a check went out of Harbin's, Inc.'s account into Harbin's account. These amounts were not mixed and were not commingled.

The fact that Harbin paid several bills out of his own personal account when Harbin's, Inc. did not have the money was also traceable and is not commingling. Steelcase also alludes to an occasion when Harbin placed corporate funds, earmarked for Steelcase, in his own personal account to make sure those funds did not get spent for something else. The exact amount of the check can be traced in and out of his personal account. Moreover the funds were earmarked for Steelcase in 2001. Steelcase has no claim from 2001.

**Exhibit 2** shows Steelcase's account statement from January 31, 2003. The oldest unpaid purchase order was dated September 25, 2002. So using Harbin's personal account only as a temporary depository was not commingling and had absolutely no impact on the inability of Harbin's, Inc. to pay Steelcase (**Exhibit 3**, pp. 128 - 130 of Harbin's

Steelcase, Inc. v Michael G. Harbin, et. al.
Brief in Response to Motion for Summary
Judgment on Piercing the Corporate Veil Claim     Page 9     Docket No.: 1:04cv0026

deposition). Not only did this happen in 2000, well before Steelcase's claim arose, but the money was earmarked for Steelcase. Steelcase has not shown that any funds were commingled.

### 3.2.3 SIPHONING CORPORATE FUNDS FOR PERSONAL USE

The only instance that Steelcase cites as illustrating this allegation is a rebate check made payable to Harbin's, Inc. which was deposited into Harbin's personal account in 2000. The amount was $1,598.00. This money was attributable to work done by Harbin's, Inc. which came in after Harbin's, Inc. had joined with Stern Brothers, Inc. to form Harbin's - Stern Brothers, LLC. As indicated earlier Harbin's, Inc. may not have had a separate checking account. Harbin testified in his divorce deposition (Exhibit C to Steelcase's brief) that he did not recall whether or not this amount was reported personally by him as income, or if he shared it with the other shareholder at the time (his sister). There is no proof that this money was used by Harbin personally and the relation of this one incident illustrates the bankruptcy of Steelcase's position.

### 3.2.4 PERSONAL LOANS TO HARBIN'S, INC. MADE BY HARBIN WITHOUT FORMAL AGREEMENTS OF REPAYMENT

As indicated in the affidavit of Harbin accompanying his Motion for Summary Judgment, and as pointed out by Steelcase, Harbin did make several personal loans to Harbin's, Inc., particularly during the last few years that Harbin's, Inc. was conducting business. Some of that was never paid back. The purpose of doing that was to make payroll and continue to stay open for business. As long as the loans are properly accounted for in the corporate financial records there is no requirement that the loans be

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary
Judgment on Piercing the Corporate Veil Claim**  Page 10  Docket No.: 1:04cv0026

evidenced by promissory notes.

The only specific instance of a personal loan recited by Steelcase came from a deposition given in his divorce case several years earlier. It relates to a transaction in April of 2001. That was over a year and a half before any of the debt that Steelcase is suing for. Steelcase does not explain the connection.

### 3.2.5 TRANSFER OF ASSETS FROM ANOTHER BUSINESS WITHOUT ADEQUATE CONSIDERATION

Steelcase alleges that Harbin testified that he regularly transferred assets between Harbin's, Inc. and another corporation he had an interest in - Retail Enhancement Services, Inc. Once again, Steelcase cherry picks from excerpts of a number of depositions Harbin gave in a very contentious divorce proceeding, a deposition in this case some time later and documents apparently obtained from the divorce file. Not only does Steelcase mis-characterize Harbin's testimony, but it jumps to conclusions that are unsupported by its cited facts. Its conclusions are reached from the following testimony in Harbin's deposition in this case (Exhibit B to Steelcase's response brief, pp. 68 and 69):

> A. Again, if Retail Enhancements needed a pen - - I remember we used to take it out of Harbin's inventory and book it as a receivable from Retail to pay Harbin's back, and vice versa. There should be some type of corresponding - - if there are any floating around - - balance sheets that show the same thing.

The only balance sheet that Steelcase's counsel showed Harbin during his deposition was a June 30, 1999 balance sheet of Harbin's, Inc. which showed a receivable from Retail Enhancements, Inc. in the amount of $297,413.50. When Harbin's deposition was taken in this case on January 27, 2005, he could not remember what that book entry

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil Claim**     Page 11     Docket No.: 1:04cv0026

was. He was asked by Steelcase's counsel the following (**Exhibit 4**, Harbin's deposition, pp. 71 and 72):

> **Q. So all the assets of Retail Enhancement were moved over to Harbin's, and you may or may not have made a record of that?**
>
> A. There may be a journal entry somewhere. Where it is I don't know, and how it was logged or booked, that's not my forte, so I don't know.

From the above testimony Steelcase jumps to the conclusion that Retail Enhancements, Inc. owed almost $300,000.00 to Harbin and Harbin, who only owned 54% of Retail Enhancements, Inc., forgave that debt. There is nothing in the record which would justify that conclusion. In fact, as indicated in Harbin's affidavit accompanying this brief (**Exhibit 1**), he believes that when Retail Enhancements Services, Inc. ceased doing business, its assets were transferred to Harbin's, Inc. (probably in return for a note which Harbin's, Inc. eventually paid off after the assets were sold). It is likely that the Retail Enhancements Services, Inc. assets were booked as a receivable in Harbin's, Inc.'s books in June of 1999 because Harbin's, Inc. had not yet had time to inventory them.[1]

The allegation that Harbin transferred assets from Retail Enhancements Services, Inc. to Harbin's, Inc. without adequate consideration is completely without any factual foundation and patently false.

---

[1] These types of allegations illustrate why, if this piercing claim is allowed to continue to trial, venue should be changed to Alabama. Affiliated corporate records may or may not exist, but they most certainly do not exist in Michigan. Also, Harbin's business partners (in Retail Enhancement Services, Inc.) are located in Alabama. It is essential that Harbin be permitted to conduct discovery in Alabama if this Court is inclined to deny Harbin's Motion for Summary Judgment dismissing the piercing claim.

Steelcase, Inc. v Michael G. Harbin, et. al.
Brief in Response to Motion for Summary
Judgment on Piercing the Corporate Veil Claim          Page 12          Docket No.: 1:04cv0026

### 3.2.6  HARBIN'S EXECUTION OF PERSONAL GUARANTIES

Harbin personally guaranteed the debt of Harbin's, Inc.'s loan to Colonial Bank as well as certain specified purchase orders to Steelcase. Steelcase suggests that this is a factor justifying a piercing claim. In support of that proposition it cites United States v WRW Corp., 986 F. 2d 138 (6th Cir. Ct. 1993). In that case the court was interpreting **Kentucky law** which specifically listed shareholder guaranties as a factor for the court to consider in a piercing claim. This Court has no obligation to follow Kentucky law. Moreover, WRW was a case where shareholders were determined to be personally liable for penalties assessed against a mining operation for safety violations which resulted in the death of two miners. WRW is completely off point.

It is ironic that for the last dozen years prior to the closing of Harbin's, Inc., Steelcase constantly urged Harbin to sign continuing personal guaranties which Harbin always refused to do. Now, Steelcase wishes to use the fact that Harbin signed limited personal guaranties as evidence that the corporate veil should be pierced which would have the effect of converting the limited personal guaranties into the broad all encompassing continuing personal guaranties that Harbin had in the past always refused to sign.

It is also ironic that after extending credit to Harbin's Inc., totaling well in excess of ten million dollars over the years, Steelcase would now criticize it for being under-capitalized while at the same time criticizing Harbin for attempting to capitalize the corporation by making personal loans and signing limited personal guaranties.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil Claim**     Page 13                                Docket No.: 1:04cv0026

### 3.2.7 HARBIN'S, INC. WAS NOT UNDER-CAPITALIZED IN THE SENSE THAT THE COURTS CONSIDER IN PIERCING THE CORPORATE VEIL

Harbin did, in fact, refer to Harbin's, Inc. as a "small under-capitalized company" in his deposition. Steelcase cites this acknowledgment as another basis for piercing the corporate veil. In support, Steelcase cites <u>Labadie Coal Co. v Black</u>, 672 F. 2d 92 (D.C. Cir. 1984) for the proposition that under-capitalization alone has been deemed sufficient by courts to pierce the corporate veil (p. 23 of the Steelcase brief). In <u>Labadie</u> the court remanded the case for consideration as to whether or not the corporation was under-capitalized. It noted that the initial capitalization was with $5,000 "followed by several years of failure of corporate profit." On remand, the district court was instructed to find whether or not the corporation was adequately capitalized.

Harbin's, Inc. was a Steelcase dealer for approximately 37 years. Steelcase sold tens of millions of dollars worth of its product through Harbin's, Inc. over those 37 years - the last 13 of those years with Harbin at the helm. Is Steelcase claiming that Harbin's, Inc. was always under-capitalized, or just when it went out of business? Steelcase has not cited one case where the court has determined that a corporate veil ought to be pierced for under-capitalization of a corporation that has been in business for over 30 years. <u>Labadie</u>, supra, is clearly distinguishable on its facts. If Harbin's, Inc. was under-capitalized, so is every other business that fails for lack of adequate cash flow.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil**       Page 14       Docket No.: 1:04cv0026

### 3.3 IT IS NOT UNJUST TO STEELCASE FOR THIS COURT TO RECOGNIZE THE CORPORATE ENTITY OF HARBIN'S, INC.

The second prong of the piercing test cited in <u>Aguirre</u>, supra, is "the degree of injustice visited on the litigants by recognition of the corporate entity. "Id at p. 12. Steelcase characterizes the wrong done to it at p. 24 of its brief as follows:

> ...[W]hat that means is that Harbin's, Inc. received quality Steelcase product, sold it to customers, got paid for it, and never paid Steelcase. If Harbin's, Inc. was legitimately run as a corporation so be it, but the evidence says it was not.

As the 6th Cir. recognized in <u>Aguirre</u>, supra, p.15:

> The mere fact that the company ceased operation without being able to pay all of its debts is, of course, not the sort of injustice contemplated [in the veil-piercing analysis].

For this proposition the court cited <u>NLRBV Fullerton Transfer and Storage, Ltd.</u>, 910 F. 2d 331, 341 (6th Cir. 1990). In <u>Fullerton</u>, referring to the fact that the company ceasing operation without being able to pay all its debts is not the sort of injustice contemplated for the purposes of veil piercing, it was also noted:

> ...[T]his form of injustice, if that is the correct term for it, is present in every case...

Is it unjust that Steelcase be left with an unsatisfied judgment against Harbin's, Inc. without personal liability of Harbin? As the courts in <u>Fullerton</u> and <u>Aguirre</u> pointed out, it is an accepted fact of doing business that occasionally one will extend credit to another business that then fails. People incorporate for the purpose of obtaining personal liability protection. Businesses doing business with corporations hedge against that liability protection by obtaining personal guaranties from the owners of the corporation and by

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil Claim**     Page 15     Docket No.: 1:04cv0026

obtaining security agreements. Steelcase did neither. Nevertheless, it continued to extend credit to Harbin's, Inc. for almost 36 years (13 years while Harbin was in control) and apparently was well satisfied with that relationship. Steelcase made a judgment to bear the risk that Harbin would not be personally liable and Steelcase would have no security, in the event that Harbin's, Inc. would, at some point, be unable to pay. Having borne that risk, unless Steelcase can establish an injustice to it, beyond the fact that it was unable to collect, Harbin is entitled to the protection of the corporate entity.

### 3.4 HARBIN HAD NO FRAUDULENT INTENT

The third prong of the piercing test as related in <u>Aguirre</u>, supra, is "the fraudulent intent of the incorporators." While Michigan does not require proof of fraud, there has to be some wrongdoing involved for the corporate veil to be pierced. Steelcase argues that the evidence of wrongdoing is the alleged commingling of funds, siphoning funds for personal use, signing personal guaranties, running an under-capitalized corporation, etc., are indications of wrongdoing. Nothing could be further from the truth. As we have seen, the isolated activities pointed out by Steelcase as justification for piercing the corporate veil, were done for the benefit of the corporation, or for legitimate business reasons. There was nothing wrongful about any of Harbin's actions referenced by Steelcase. Moreover, virtually all of these isolated instances occurred well before Steelcase's claims began to accrue.

As this Court noted in <u>USA v CPC International, Inc.</u>, 1997 U.S. Dist. LEXIS 14154 p. 18 citing <u>US v Cordova Chemical Co. of Michigan</u>, 113 F. 3d 572 (1997) (en banc) (at 580, n. 4):

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil Claim**                Page 16                    Docket No.: 1:04cv0026

> ...piercing the corporate veil under Michigan law requires that the subsidiary be a "mere instrumentality" of the parent which is used either to subvert justice or to circumvent overriding public policy....

This means there must be a nexus between the wrongful conduct alleged and the damages claimed. In this case, Steelcase has completely failed to make any connection between any of the instances recited in its brief as reasons to pierce the corporate veil, and its inability to collect from Harbin's, Inc.

Steelcase did business with Harbin's, Inc. for some 36 years knowing all the time that it was a corporation. Steelcase cannot claim that the use of the corporate form was used to subvert justice, particularly inasmuch as Steelcase profited from a successful business relationship for almost 36 years.

Steelcase has also failed to articulate any overriding public policy which would be circumvented if this Court recognizes the corporate form.

Perhaps the causation (or nexus) requirement was best described in <u>Becon Services Corp. v Hazel Industrial, Inc</u>., 33 Va. Cir. 554, 555; 1992 Va. Cir. LEXIS 544 when the court, citing <u>Users Association v Washington & O.D.RR.</u>, 208 Va. 1, 7, 155 S. E. 2d 322 (1967) noted:

> ...[T]here must exist a nexus between the wrongful conduct arising out of the domination of the corporation and the damages suffered...

Steelcase utterly fails to make the connection in this case. There is no nexus.

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil Claim**      Page 17      Docket No.: 1:04cv0026

**4.0** **CONCLUSION**

Those isolated instances identified by Steelcase as abuses of the corporate formalities are not uncommon in small closely held corporations. For the most part, every so called abuse identified by Steelcase was for the benefit of the corporation. Moreover, Steelcase draws no connection between these isolated instances and its failure to collect from Harbin's, Inc. So even if Steelcase could show some wrongdoing, at some point during the last 13 years, there must be a nexus between that wrongdoing and Steelcase's loss. Steelcase has failed to identify any nexus between the alleged wrongdoing and its loss. Steelcase's motion for summary judgment on the piercing claim should be denied and Harbin's cross-motion should be granted.

Dated: June 28, 2005                    SILVERMAN, SMITH & RICE, P.C.
                                        Attorneys for Michael G. Harbin


                                            /s/ Robert W. Smith
                                        Robert W. Smith (P31192)

Steelcase, Inc. v Michael G. Harbin, et. al.
**Brief in Response to Motion for Summary**
**Judgment on Piercing the Corporate Veil Claim**          Page 18                    Docket No.: 1:04cv0026