# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

STEELCASE, INC. a Michigan
corporation,

        Plaintiff,

v

        Case No.: 1:04cv0026
        Hon. Robert Holmes Bell
        Chief, U. S. District Judge

HARBIN'S INC., an Alabama
corporation, MICHAEL G. HARBIN
and HOPE D. HARBIN PATTERSON (now
HOPE DUNCAN PATTERSON),

        Defendants.

_____/

| | |
|---|---|
| MILLER, JOHNSON, SNELL & CUMMISKEY, P. L. C. | SILVERMAN, SMITH & RICE, P.C. |
| Jon G. March  (P17065) | Robert W. Smith (P31192) |
| Attorneys for Plaintiff | Attorneys for Defendant Michael G. Harbin |
| 250 Monroe Avenue, N. W. - Ste 800 | 151 S. Rose Street |
| P. O. Box 306 | 707 Comerica Building |
| Grand Rapids, MI 49501-0306 | Kalamazoo, MI 49007 |
| (616) 831-1700 | (269) 381-2090 |

HOPE D. PATTERSON
Defendant in Pro Per
5626 Mill Race Court
Atlanta, GA 30338

_____/

## AFFIDAVIT OF MICHAEL G. HARBIN
### IN OPPOSITION TO STEELCASE, INC.'S MOTION FOR SUMMARY JUDGMENT
### WITH RESPECT TO PLAINTIFF'S CLAIM OF PIERCING THE CORPORATE VEIL

        Michael G. Harbin deposes and says as follows:

1.      I am one of the Defendants in the above captioned case.

2.    If called upon to testify I can testify truthfully and accurately as to all those matters contained herein.

3.    When Harbin's, Inc. ceased doing business in late April of 2004, I was the sole-shareholder and President of Harbin's, Inc.

4.    The closing of Harbin's, Inc. was a result of a weak economy, Steelcase refusing to ship products, and financial difficulties, culminating in Colonial Bank taking possession of its collateral which included virtually all of the assets of Harbin's, Inc. At the same time, the building in which Harbin's, Inc. was located was turned over to the mortgagee with a deed in lieu of foreclosure.

5.    My home and new employment opportunity was in Florida. I had been instructed by the attorney for Harbin's, Inc. that I needed to retain a record of all accounts payable and the check registers in the event that it became necessary for Harbin's, Inc. to file bankruptcy. Any remaining records were left behind. I had no need for them. Steelcase had not asked me to retain any records, no one did, not even Colonial Bank who had a secured interest, even though this lawsuit was filed well before Harbin's, Inc. went out of business. I had no knowledge of any duty to retain those records. I did not destroy any records of Harbin's, Inc.

6.    At the time that Harbin's, Inc. went out of business and the corporate records were left behind, I was not a party to this lawsuit. Steelcase did not make its claim on the guaranties until the First Amended Complaint was filed on October 20, 2004, and the piercing the corporate veil claim was not mentioned until Steelcase requested leave to file a Second Amended Complaint on March 1, 2005 (ten (10) months after Harbin's, Inc. went out of business). Steelcase had no security agreement with Harbin's, Inc. and made no

Steelcase, Inc. v Michael G. Harbin, et. al.                    Page 2                    File No.: 1:04cv00026
Harbin's Affidavit in Opposition to Plaintiff's Motion for
Summary Judgment of Piercing the Corporate Veil Claim

request of me, or my counsel, that corporate records be retained. So I had no reason to know that any corporate records, other than those that my attorney told me to keep which I did, would be needed by Steelcase in this litigation.

7.     Harbin's, Inc. was a retail office furniture and equipment dealership in Montgomery, Alabama. Stern Brothers, Inc. was a used furniture store and furniture repair business. In 1998, or 1999, Harbin's, Inc. (51%) and Stern Brothers, Inc. (49%) formed a limited liability company known as Harbin's Stern Brothers, LLC. Both businesses were conducted by the LLC until 2001. Harbin's, Inc. had its own location and its own assets as did Stern Brothers, Inc. The only physical changes made when the LLC began to conduct business, was that the owner of Stern Brothers, Inc. performed some of the administrative tasks of his portion of the business out of an office in the Harbin's, Inc. location.

8.     When we did business as Harbin's Stern Brothers, LLC, all business of both companies flowed through that entity. When we liquidated Harbin's Stern Brothers, LLC, Harbin's, Inc. retained all of its original assets along with all assets pertaining to its business and Stern Brothers, Inc. did the same.

9.     While Harbin's Stern Brothers, LLC was in business, it maintained business bank accounts. Harbin's, Inc. terminated its bank account because all of the business was running through the LLC. However, certain dealership rebate checks came in to the LLC as a result of business done by Harbin's, Inc. prior to the formation of the LLC. These rebate checks were attributable solely to Harbin's, Inc. and did not belong to the LLC. Because there was no separate Harbin's, Inc. checking account, I deposited some of the rebate checks into my personal account. They were accounted for in the corporate books and distributed appropriately. Any such rebate checks would have been distributed in 1998,

Steelcase, Inc. v Michael G. Harbin, et. al.                    Page 3                         File No.: 1:04cv00026
Harbin's Affidavit in Opposition to Plaintiff's Motion for
Summary Judgment of Piercing the Corporate Veil Claim

or 1999. No rebate checks were deposited into my personal accounts after Harbin's Stern Brothers, LLC ceased doing business in 2001.

10.     Steelcase continued to grant credit and ship to Harbin's - Stern Brothers, LLC and never questioned the change in business structure of Harbin's, Inc. until its motion for summary judgment.

11.     In September of 2003, when Harbin's, Inc. was experiencing severe financial difficulties, one of its vendors began requiring certified checks upon delivery. This was S. P. Richards Co. Harbin's, Inc. received deliveries from S. P. Richards Co. daily. The cost of a certified check from the Harbin's, Inc. bank account was $10.00 per check. I had free certified checking privileges in my personal account. In order to save the cost of a certified check I would go to my personal bank ( a block away from Harbin's, Inc.) and obtain a certified check to pay S. P. Richards Co. I would then have the Harbin's, Inc. bookkeeper write me a check as a reimbursement for those payments.

12.     In December of 2003, when Harbin's, Inc. was in deep financial trouble, it bounced a check to Blue Cross/Blue Shield for employee health insurance benefits. To cover that check I sent a certified check from my personal bank account to Blue Cross/Blue Shield. Harbin's, Inc. reimbursed me for that payment on October 28, 2003, when there were sufficient funds in the Harbin's, Inc. checking account to do that.

13.     During the last few months that Harbin's, Inc. was doing business, there would not be enough money to my salary for operating the store. When that happened I would forgo taking any salary. When money did become available, I would be paid directly by Harbin's, Inc. outside the course of the usual payroll method. Our payroll company recommended that Harbin's, Inc. write me a manual check, that it be reported to the payroll service, and

Steelcase, Inc. v Michael G. Harbin, et. al.                    Page 4                    File No.: 1:04cv00026
Harbin's Affidavit in Opposition to Plaintiff's Motion for
Summary Judgment of Piercing the Corporate Veil Claim

the payroll service would then provide Harbin's, Inc. with instructions on how to net the check amount out.

14.     During the last few years that Harbin's, Inc. was open for business I personally made several operating loans to Harbin's, Inc. Those operating loans were recorded on the balance sheet of Harbin's, Inc. When there was money available, the operating loan was paid down, or off. Although, I believe that Harbin's, Inc. still owes me approximately $13,000 for personal operating loans. Some of the money from these operating loans was used to pay Steelcase.

15.     Harbin's, Inc. was a C corporation under federal tax laws. Accordingly, the less profit Harbin's, Inc. had the less corporate taxes it would have to pay. As a result, Harbin's, Inc. always attempted to assure that accounts payable were paid before the end of the tax year. They were in 2001 when Harbin's, Inc. showed a small profit. So Harbin's, Inc. was current on all its accounts payable as of December 31, 2001.

16.     When Harbin's Stern Brothers, LLC ceased doing business I had one of its bank accounts changed to a Harbin's, Inc. bank account. That bank account was with Sterling Bank of Montgomery Alabama. I had a number of checks left over from when the account belonged to Harbin's Stern Brothers, LLC and I continued to use those checks for the accounts payable of Harbin's, Inc.

17.     I had a membership interest in Retail Enhancement Services, LLC, which closed in approximately 1999. The assets of Retail Enhancement Services, LLC were then sold to Harbin's, Inc., but I do not recall exactly how that was done from an accounting standpoint and any records of that transaction would have remained behind when Harbin's, Inc. went out of business. During my deposition I was shown a Harbin's, Inc. balance sheet dated

Steelcase, Inc. v Michael G. Harbin, et. al.                           Page 5                           File No.: 1:04cv00026
Harbin's Affidavit in Opposition to Plaintiff's Motion for
Summary Judgment of Piercing the Corporate Veil Claim

June 30, 1999, showing an accounts receivable from Retail Enhancement Services, LLC in the amount of $297,413.50. I believe that Harbin's, Inc. purchased the inventory from Retail Enhancement Services, LLC and that inventory was booked as a receivable in the June 30, 1999 balance sheet. I believe that is because Harbin's, Inc. had not properly inventoried those assets at the time the balance sheet was prepared.

18.     When I testified in my deposition that Harbin's, Inc. "had a lack of profitability, a weak economy, small under-capitalized company going through a three year period of down turn in the economy which caused the business to collapse", I meant by the use of the term "under-capitalized" that the cash flow of Harbin's, Inc. was such that beginning in mid-2002 it was unable to keep current with its accounts payable.

19.     Further your affiant sayeth not.

Dated: June 2 7, 2005

Michael G. Harbin

STATE OF FLORIDA          )
                          >
COUNTY OF WALTON          ).

SUBSCRIBED and SWORN to before me, a Notary Public, on this _2 7_ day of _June_ , 2005, on behalf of Michael G. Harbin.

(signature)
Walton County, Florida
My Commission Expires: _11 / 28 / 2006_
Acting in the County of Walton.



CHERIE L. MCDANIEL
MY COMMISSION EXPIRES
November 28, 2006
#DD 168020
Bonded thru
Notary Public Underwriters
NOTARY PUBLIC, STATE OF FLORIDA

Steelcase, Inc. v Michael G. Harbin, et. al.                Page 6                File No.: 1:04cv00026
Harbin's Affidavit in Opposition to Plaintiff's Motion for
Summary Judgment of Piercing the Corporate Veil Claim